# Wolff Chemical Company, Appellant, v. Philadelphia.

*Corporations—Trading corporation—Right to maintain taxpayer's bill—Municipalities—Diversion of public funds.*

A trading corporation which is a resident and taxpayer in a city has a right to maintain a taxpayer's bill to restrain illegal action on the part of the officials of the city in the appropriation of public funds; and it is immaterial that the fund in question was raised by a loan authorized by the electors of the city and not by taxpayers.

*Municipalities—Increase of indebtedness—Wrongful appropriation of funds.*

Where a city has incurred liability in opening a boulevard and thereafter the electors of the city have authorized a loan, part of which is to be "for continuing the improvement of the boulevard," the city councils have no right to divert the fund raised by the loan for the payment of mandamuses for the opening of the boulevard.

In such a case it is clear that the appropriation "for continuing the improvement of the boulevard," was not intended to be applied to the opening of the boulevard. "Continuing the improvement of the boulevard" implies the prior existence of a boulevard, a change for the better in its condition, and that some progress had previously been made in bettering its condition when the city councils and the electors authorized the increase of the municipal indebtedness for the purpose.

Argued Jan. 21, 1907.    Appeal, No. 91, Jan. T., 1906, by plaintiff, from decree of C. P. No. 4, Phila. Co., Dec. T., 1904, No. 1627, dismissing bill in equity in case of The Wolff Chemical Company v. City of Philadelphia, John Weaver, Mayor

of Philadelphia, John M. Walton, City Controller, et al.    Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.    Reversed.

Bill in equity for an injunction.    Before WILLSON, P. J.
The facts are stated in the opinion of the Supreme Court.

*Error assigned* was decree dismissing the bill.

*John G. Johnson*, with him *Henry P. Brown*, for appellant.—The plaintiff had a standing to maintain the action: Pittsburg's App., 79 Pa. 317; Page v. Allen, 58 Pa. 338; Sank v. Philadelphia, 8 Phila. 117; Barr v. Philadelphia, 191 Pa. 438.

The indebtedness of the city was permitted to be increased for the special purpose of "continuing the improvement of the Boulevard."

The opening of the boulevard was not within the purpose for which the indebtedness was authorized to be increased.

Councils had no right to transfer the appropriation of money specifically raised for "continuing the improvement of the Boulevard," to the payment of damages to property owners whose lands had been taken by the opening thereof: Major v. Aldan Boro., 209 Pa. 247.

*Ernest Lowengrund*, with him *James Alcorn*, assistant city solicitor, and *John L. Kinsey*, city solicitor, for appellees.—Appellant was without standing: Heffner v. Com., 28 Pa. 108; American Product Co. v. Philadelphia, 15 Pa. Dist. Rep. 587; Smith v. McCarthy, 56 Pa. 359; Sharpless v. Mayor, etc., of Phila., 21 Pa. 147; Page v. Allen, 58 Pa. 338; Wheeler v. Philadelphia, 77 Pa. 338; Mazet v. Pittsburg, 137 Pa. 548; Blankenburg v. Black, 200 Pa. 629.

The use of the fund to pay land damages for the opening of the boulevard is not in violation of the terms upon which it was authorized to be borrowed; Barr v. Philadelphia, 191 Pa. 438; Major v. Aldan Borough, 209 Pa. 247.

OPINION BY MR. JUSTICE MESTREZAT, March 11, 1907:
By certain ordinances, enacted March 28, 1903, the councils of the city of Philadelphia directed notice to be given the prop-

erty owners thereby affected that the boulevard from Broad to Second street would, in three months, be required for public use to its full width as then on the city plan ; also directed that the proper department advertise for proposals for improving the boulevard ; and appropriated $250,000 to commence the improvement. In pursuance of an ordinance of December 17, 1903, the electors of the city, at an election held in February, 1904, authorized an increase in the indebtedness of the city of $16,000,000, of which $1,000,000 were to be " for continuing the improvement of the boulevard from Broad street northeastward." By an ordinance of December, 1904, it was ordained that the city controller transfer $500,000, set aside for continuing the improvement of the boulevard, to item eighteen in the appropriation to the department of city treasurer for the purpose of paying mandamuses for opening the boulevard. This bill was then brought by the Wolff Chemical Company, a corporation duly organized under the laws of Pennsylvania and a taxpayer of the city of Philadelphia, against said city and certain of its officers to restrain the transfer of the money as provided in the last-named ordinance. It avers that the ordinance is illegal, and that the payment by the city treasurer of mandamuses for the opening of the boulevard out of any portion of the $1,000,000 appropriated for continuing the improvement of the boulevard cannot legally be made. The defendants filled a demurrer to the bill and assigned, inter alia, as grounds therefor that the plaintiff had no right to maintain the bill, and that the use proposed to be made of the $500,000 was for the same purpose for which it was authorized by the ordinances of councils and the vote of the electors. The learned court below sustained the demurrer, holding that the "improvement" of the boulevard included the "opening" of the boulevard. The plaintiff has appealed.

The two questions thus raised by the pleadings are : (1) whether the plaintiff has the right to maintain the bill, and (2) whether councils have the right to transfer $500,000 of the $1,000,000 fund authorized to be applied in continuing the improvement of the boulevard, and use it for the purpose of paying damages to property owners whose lands have been taken by the opening of the boulevard.

The plaintiff is a trading corporation, incorporated under the laws of this commonwealth, and is doing business in the city of Philadelphia. It is a taxpayer of the city, and it claims that, as such, it has, like an individual taxpayer, the right to maintain a bill to test the validity of an intended illegal diversion of an appropriation of the funds of the city by authority of councils. The defendants contend that a trading corporation, although a resident and taxpayer, has no standing to file a taxpayer's bill against a city or its officers. But with that contention we do not agree. A corporation may avail itself of any legal and equitable remedy which would be available to an individual under similar circumstances; and it is impliedly authorized to sue in chancery whenever its equitable rights are involved: 1 Morawitz on Corporations, sec. 357. The defendants' contention overlooks the ground upon which a party is authorized to invoke the aid of a court of equity to prevent the misapplication of public funds. In such case, he is accorded a standing in equity because of the reason that he is a taxpayer and that if municipal funds are misappropriated he will be injured pecuniarily, and not upon the ground that he is simply a citizen or an inhabitant or an elector. The invasion of his pecuniary interests is the special injury that gives him a standing to maintain a bill. This is the reason recognized and stated as the ground for permitting any party to object to an illegal diversion or misappropriation of public funds: 2 High on Injunctions, sec. 1298; 2 Cooley on Taxation, 1427; Page v. Allen, 58 Pa. 338; Pittsburg's Appeal, 79 Pa. 317; Frame v. Felix, 167 Pa. 47. In the Pennsylvania cases, the ground for sustaining the bill is said to be " that the interest of a taxpayer, when money is to be raised by taxation, or expended from the treasury, is sufficient to entitle him to maintain a bill to test the validity of the law which proposes the assessment or expenditure." In sustaining a bill filed by taxpayers to restrain action of the city authorities under an ordinance creating a loan for the extension of water works, in Sank v. Philadelphia, 8 Phila. 117, Chief Justice THOMPSON said (p. 122): " I have no doubt of their right. We have held this more than once. It seems to me it is most appropriately their province. Some, as well as all, can do it. It would be impossible to make all the taxpayers parties to the bill, and

hence some must act, or none will.  The taxpayers bear all the burdens of expenditures by the city.  They ought, in order to protect themselves from unreasonable burdens, scrutinize the acts of their servants when proposing to increase their burdens."

Regarding his pecuniary interest as the ground upon which a party is permitted to file a taxpayer's bill, it logically follows that a citizen, inhabitant or incorporator of the municipality can have no greater right or higher ground than a resident taxpaying corporation to maintain such bill.  An illegal diversion or a misapplication of public funds, raised by general taxation, increases the burdens of a corporation as it does those of a citizen, and therefore it is not apparent why the courts should be closed to the corporation and open to the individual.  The effect of the misconduct of the city officials in misapplying the public funds is the same on both, and the remedy and the protection of the law should be afforded alike to both parties.  A corporation is simply an aggregation of individuals, and there can be no good reason why their interests in the taxable property of the corporation should not receive the same protection in a court of equity against official misconduct as if the injury had been done against taxable property held by them as individuals.  To hold otherwise would be to deprive a corporation of the equal protection of the laws of the commonwealth, which is guaranteed by the fourteenth amendment to the federal constitution: Santa Clara County v. Southern Pac. R. Co., 118 U. S. 394; Pembina Consolidated Silver Mining and Milling Co. v. Pennsylvania, 125 U. S. 181.

In addition to the reason suggested, there is another one, having at least some force, why a trading corporation should be allowed to maintain a taxpayer's bill.  After a diligent search, we have been unable to find in any American or English decision of a court of last resort where the question has heretofore been raised.  In none of the reported decisions of the several states of this country, nor in any decision of any of the federal courts where a corporation has invoked the protection of a chancellor in such cases, has the defendant challenged the right of the corporation as such to maintain the bill.  On the other hand, there are numerous cases in the various juris-

dictions in which a corporation has successfully maintained a taxpayer's bill to restrain illegal action in the appropriation of public funds. If the question was an open one, or there was any doubt of a corporation's right to protect its property or its funds against the inroads of the misconduct of municipal officials, it is most singular that in the numerous cases which have reached the appellate courts of this country and of England it has not been raised or adjudicated. We can attribute it only to the fact that the profession has universally acquiesced in the right.

It is argued by the learned counsel for the appellees that permission to increase the indebtedness was granted by the electors of the city and not by the taxpayers, and for that reason a corporation, not being an elector, has no right to invoke the aid of the court to prevent the illegal diversion of the fund. The counsel say in their brief: " The present appellant being a corporation, is, of course, not an elector, and it may well be asked by what right it might seek to intervene in order that the permissive power granted by the body of the people should be duly carried out, even were a violation thereof attempted." The conclusive answer to that proposition is, that while the electors gave the permission to the city to increase its indebtedness and thereby to impose a tax, the law gives to the individual or corporation who must pay the tax the right to demand that the city officials shall appropriate the fund to the purpose intended, and that it shall not be misappropriated and the burden of the taxpayer thereby increased. In other words, while the authority to borrow money must come from the electors of the city, the taxpayers who are required to repay it have such an interest in the appropriation of the fund as will enable them to invoke the aid of a chancellor to prevent its diversion to an illegal or unauthorized purpose. The misapplication of the fund is not, as argued by the city solicitor, a matter which lies between the city and its citizens, and as to which the plaintiff corporation is a stranger. No individual can be regarded as a stranger to any action of a municipality or its officers which tends to impose upon him additional taxation. He is a party in interest and hence has a right to be heard before he is deprived of his property. This rule applies to the corporation and to the in-

dividual alike.   It is a fundamental principle, and protects the artificial, as well as the natural, person in its property rights.

It is also argued by the appellees that the appellant " is without a monetary interest or concern in the controversy," because, as alleged, if the damages for the opening of the boulevard be not paid out of this loan, they must be paid by the city either by taxation or by some loan to be raised hereafter.   If this position is tenable, it will be difficult to find an instance where a taxpayer can enjoin a misappropriation of public funds.   The learned counsel, however, are in error in their contention that the appellant has no monetary interest in having the city apply this fund to the purpose for which it was appropriated.   The $500,000 sought to be diverted here was appropriated for the specific purpose of continuing the improvement of the boulevard.   If the fund is not applied to that purpose, a like sum must be raised by imposing a tax upon the taxpayers of the city to carry out the improvement of the boulevard.   To the extent of its taxes, this corporation is therefore pecuniarily interested.   It is not to the point that the fund misappropriated will go to the payment of another indebtedness of the city, and hence relieve the taxpayers to that extent.   It is sufficient for the taxpayer to know that the diversion of this fund from the purpose for which it was intended and specifically appropriated will impose upon him an additional burden in order to carry out the improvements on the boulevard authorized and directed to be done by the authority of the city.   He is concerned, monetarily, in having the $500,000 applied to the specific purpose for which it was appropriated, and should the court refuse to compel the city to so apply it, he will be injured to the extent of the additional taxes he is required to pay.

We have no doubt of the right of the plaintiff corporation, being a resident and taxpayer of the city of Philadelphia, to maintain this bill.

The second question raised by the record and the only one considered and ruled by the court below is the right of the city councils to transfer the fund appropriated for " continuing the improvement of the boulevard from Broad Street northeastward," and apply it " for the purpose of paying mandamuses for the opening of the boulevard."   The learned trial judge

ruled the question in favor of the city, and held that it was not a diversion of the fund from the purposes for which it was appropriated. We think this is error.

The action of the city councils in dealing with the boulevard, as disclosed by the various ordinances, recognizes a distinction between the opening of the boulevard and the improvement of it. By the ordinance of March 28, 1903, the director of the department of public works was directed to notify the owners of the property through which the boulevard would pass that at the expiration of three months, " the street will be required for public use to its full width as now on the city plan." This was followed by an ordinance of the same date which authorized the same city department to advertise for proposals for grading, curbing, macadamizing, planting trees, and "other contingent work required to improve the boulevard ;" and in pursuance of the ordinance, the city arranged for the "improvement of the boulevard" by grading, curbing, culverting, macadamizing, bridging and otherwise. Another ordinance of the same date appropriated $250,000 "for the commencement of said improvement," and in pursuance of this ordinance, a contract was let in April, 1903, for grading, paving, etc., "and doing such contingent work required to improve the boulevard" as might be ordered by the bureau of highways. It will, therefore, be observed that prior to the election for determining the question of the increase of the indebtedness the boulevard was on the city plan, was directed to be opened to the full width, and the city had contracted for its improvement by grading, curbing, macadamizing, etc., to the extent of the partial appropriation made for the purpose. Subsequent to the action thus taken in regard to the boulevard, the councils in May, 1904, authorized the creation of a loan, a part of which was to be used for "continuing the improvement of the boulevard," and in pursuance of the authority granted in that ordinance the electors of the city voted in favor of the increase of the indebtedness for that purpose. The loan secured in pursuance of this election was likewise partly appropriated "for continuing the improvement of the boulevard." It, therefore, appears that in all the proceedings of the city council, dealing with the boulevard, a distinction was recognized by the city

itself between the opening and the improvement of the boulevard. As thus defined by the city, the opening of the boulevard was the vacation of the ground included within its limits by the property owners and the removal of the buildings therefrom; and its improvement consisted in grading, curbing, macadamizing, the planting of trees and work of that character upon the ground after the street had been opened.

But aside from the action of the councils indicating this to be their interpretation of the language of the appropriation, we think it clear that the appropriation "for continuing the improvement of the boulevard" was not intended to be applied to the opening of the boulevard. "Continuing the improvement of the boulevard" implies the prior existence of a boulevard, a change for the better in its condition, and that some progress had previously been made in bettering its condition when the city councils and the electors authorized the increase of the municipal indebtedness for the purpose. As tersely put by GREY, V. C., in Ames v. Trenton Brewing Co., 56 N. J. Eq. 309, "in order that there might be an improvement there must previously have been something to improve." As long as the buildings occupied the site of the proposed boulevard and the damages due the property owners were unpaid or unsecured, there was no street to be improved. A farm may be improved by the renewal of necessary fencing, a manufactory may be improved by the installation of modern machinery, a patented article may be improved by the addition of some useful and necessary device, and a city may be improved by the opening and construction of new streets, by proper waterworks and sewer systems, but in each instance there is in existence a thing to be improved. Applying this principle here, there could be no improvement of the boulevard, until it became a boulevard by being opened in pursuance of the city ordinance. Then, and not till then, was it a street nor could it have been improved as such. If councils legally could and did make an appropriation for the improvement of the city without specifying the manner in which it was to be done, it may be conceded that the money could be applied in opening as well as constructing a street necessary to the needs of the city. Thus used, the word "improvement" is applied to the betterment of the whole city and the appropriation could be applied for

any purpose which would accomplish the object. On the other hand, if the appropriation was made for the improvement of the waterworks system, it would hardly be contended that the money could be used to open or grade a street or to improve the sewer system, although it certainly would improve the city. The word "improvement" is a relative term, and its meaning must be ascertained from the context and the subject-matter of the instrument or writing in which it is used. It follows that the word as used in the phrase "for continuing the improvement of the boulevard," does not mean or apply to the opening of the street, but to bettering its condition after it had been opened as laid on the city plan. In other words, the "improvement of the boulevard," consisted in grading, curbing, macadamizing, etc., the street after it had been opened "to its full width as now on the city plan."

In obedience to the requirements of the Act of June 9, 1891, P. L. 252, 2 Purd. 1397, the official proclamation of the election in February, 1904, contained a statement of "the purposes for which the indebtedness is to be increased." One of the purposes was: "for continuing the improvement of the boulevard from Broad street northeastward $1,000,000;" and on the ticket cast by each voter was stated the same purpose and the amount of the contemplated increase in the indebtedness. It must be assumed that the electors before casting their votes were familiar with the proceedings of the councils dealing with the proposed boulevard. The press of the city gave them full information. They, therefore, must be regarded as knowing that the boulevard had been declared a city street and that an appropriation had been made for its partial improvement. Under these circumstances, it cannot reasonably be doubted that each elector, when casting his vote, believed that the street had been opened, and that the increase of the indebtedness was for the purpose stated in the ballot furnished him, viz.: "for continuing the improvement." In view of the admitted facts, it is idle to contend that the electorate at that election believed they were voting for or against an increase for the purpose of opening the boulevard. Whatever may have been the actual condition of the street as to having been opened or not at the date of the election, necessarily, a very small number of the voters would have personal knowledge of

the fact, while the action of the city councils, as given to the public and on which they had the right to rely, gave the assurance that the street was open and in progress of improvement. The votes in favor of the increase of the indebtedness were cast in the belief that such was the condition of the boulevard, and that the increase was for the purpose of "continuing the improvement," and not for the opening of the street. If the ticket had contained a notice that the increase was for the purpose of "opening a boulevard," it is problematic whether a majority of the electors would have supported the increase, in view of the fact that they would have known that a large additional increase would be required to improve the street after it had been opened. It is one thing to present to a voter a proposition to increase an indebtedness for the purpose of continuing or completing a municipal improvement already in progress, and quite another thing to ask him to increase the debt of the city for the purpose of inaugurating a public improvement which will result in the expenditure of large sums of money. For obvious reasons, he might and probably would favor the first proposition, but he might have great hesitancy in supporting the latter. The purpose of the law in requiring full notice to the elector of the object of increasing the indebtedness is to enable him to vote intelligently and with a full comprehension of the purpose to which the money is to be applied. In casting his vote for or against the proposition, he is controlled by the purpose of the proposed increase as stated in the ballot furnished him by the city itself. Good faith and official integrity, therefore, require the city authorities to apply the fund thus placed in their hands strictly in accordance with the purpose for which it was voted. The language of the notice given the voter is that of the city councils, and if there is any doubt in its meaning it must be resolved so as to prevent the application of the fund to a purpose other than that for which the circumstances and the apparent intent of the electors intended it.

The learned counsel for the defendants suggest that if the city is not permitted to use the appropriation for the opening of the boulevard, that it may result in depriving the city of the highway. That argument cannot be successfully invoked to influence a chancellor to divert a fund from a purpose for

which it has been voted specifically by the electorate of the city in pursuance of an ordinance of council declaring the use to which it was to be applied. If the city officials have committed an error by failing to make proper provision for the opening of the boulevard prior to asking the voters of the city to vote means to improve it, the responsibility must rest where it properly belongs. It is clearly no reason for a court of equity to decree that a fund voted for a specific purpose shall be applied to and used for another and different purpose. It would in effect abrogate the constitutional and statutory provisions on the subject. They explicitly provide that the debt of the municipality shall not be increased without the assent of the electors, and that before such assent is given that public notice of the specific purpose for which the money is required shall be given, and that notice shall also be placed on the ballot which the voter casts. In view of these legal requirements and the manifest purpose to protect the taxpayers against an illegal or unnecessary expenditure of the public funds, it would indeed be a strange doctrine to announce that notwithstanding these safeguards, a fund voted for a specific purpose could at discretion be applied to another and different purpose. The proposition finds no support in precedent, is not sustained by reason, and if carried out would be the means of perpetrating a fraud upon the voters who sanctioned the increase of the indebtedness of the city.

We think we must sustain the plaintiff's contention on both propositions submitted for our determination. We are of opinion that plaintiff corporation can maintain the bill, and that the city has no right to apply the $500,000, voted for continuing the improvement of the boulevard, to payment of the damages due the landowners by reason of the opening of the boulevard. It, therefore, follows that the prayer of the bill must be granted and that an injunction should be issued.

The decree of the court below is reversed at the costs of the appellees, and it is now ordered, adjudged and decreed that an injunction issue perpetually restraining the mayor of the city of Philadelphia, the director of the department of public works, and the city controller from doing any act by which the said sum of $500,000 shall be transferred from the appro-

priation to the department of public works (Bureau of Highways) for continuing the improvement of the boulevard from Broad street northeastward to item eighteen (18) in the appropriation to the department of city treasurer for the purpose of paying mandamuses for the opening of said boulevard.