KOGER *et al. v.* HUNTER *et al.*, commissioners.

Under the constitution of this State the several counties have no power to levy taxes for any purpose, "except for educational purposes in instructing children in the elementary branches of an English education only; to build and repair the public buildings and bridges; to maintain and support prisoners; to pay jurors and coroners, and for litigation, quarantine, roads, and expenses of courts; to support paupers and pay debts heretofore existing."   The "litigation" referred to in this provision of the constitution is such litigation as involves the rights of the county as a corporation only; and, therefore, moneys collected for general county purposes can not, by those persons charged with the disbursement of such funds, be legally appropriated to the payment of attorneys' fees to counsel employed by them to enjoin the sale of liquors in violation of the provisions of a law under which the sale of liquors in such county is prohibited; and upon the petition of taxpayers of such county, a court of equity will enjoin such a contemplated misappropriation of the public funds.

Argued June 29, — Decided July 27, 1897.

Petition for injunction.   Before Judge Hart.   Morgan county. May 19, 1897.

*Foster & Butler, Joshua Hill* and *W. R. Mustin,* for plaintiffs.

ATKINSON, J. It appears from the record, that the county of Morgan, by the adoption of the provisions of the local option law, had become one of the counties in this State in which the sale of spirituous and other liquors was prohibited. Certain persons, apparently without authority of law, were proceeding in that county with the sale of spirituous liquors. The defendants in error constituted the board of commissioners of roads and revenues for that county, which board had control of the disbursement of its revenues. They had engaged the services of counsel to file a petition in equity for the purpose of restraining by injunction such illegal sale of liquors, and had appropriated, out of the general funds of the county, a sum of money sufficient to pay to such counsel the compensation agreed upon. The plaintiffs in error being taxpayers and citizens of the county, in their capacity as such, upon this state of facts, presented to the judge of the superior court a petition in equity, praying that the defendants in error be enjoined from the appropriation of any part of the money of the county to the purpose above mentioned. Upon consideration of the petition, the chancellor, without calling upon the defendants to show cause, denied the injunction prayed for; and we are now to consider whether there was error in this ruling.

The several counties of this State are bodies corporate, with such powers only as may be conferred upon them by law. See par. 1, sec. 1, art. 2, of the constitution of this State (Civil Code, § 5924). They have no source of revenue from which money for the support of their institutions can be derived, except taxes authorized to be collected for county purposes from the citizens of such counties, and those persons owning property and doing business therein. The right to levy and collect taxes exists only when it is expressly authorized by law; and we may, therefore, look to the law with confidence for the purpose of ascertaining to what extent power has been conferred upon a given county to levy and collect taxes from the citizens therein. The constitution of this State hedged about this right by defining in clear and unmistakable terms the purposes for which counties are authorized to levy taxes.

That instrument entered upon an enumeration in detail of these several purposes, and upon the familiar principle of *expressio unius exclusio alterius*, the power to levy taxes is expressly confined to the purposes thus enumerated, which operates as a constitutional denial to the several counties of any general power to collect taxes to be appropriated according to the general discretion of those charged with the disbursement of such public funds. See *Elder* v. *Collier*, 100 *Ga.* 342; *Collier* v. *Elliott*, 100 *Ga.* 363. Within the enumerated purposes, a large discretion in the appropriation of public money is necessarily vested in the officers of the county who are charged with its disbursement; but, as we have seen, the right to appropriate such moneys to purposes other than those enumerated does not exist. When we look to the constitution of this State, we find the charter powers of the several counties as corporate bodies clearly defined; and touching the right to levy taxes, that instrument, in par. 2, sec. 6, art. 7 (Civil Code, § 5892), provides: "The General Assembly shall not have power to delegate to any county the right to levy a tax for any purpose, except for educational purposes in instructing children in the elementary branches of an English education only; to build and repair the public buildings and bridges; to maintain and support prisoners; to pay jurors and coroners, and for litigation, quarantine, roads, and expenses of courts; to support paupers and pay debts heretofore existing." Within neither of these enumerated purposes can the appropriation of public money sought to be enjoined in the present case be embraced. The only one of them which by any possibility could be construed to extend to the exercise of this power is the one which authorizes the levy of taxes for "litigation." The word "litigation," as there employed, can only mean such litigation as the county, in its corporate capacity as a public corporation, is interested. Where the corporate interests are assailed, or it becomes necessary, through the courts, to vindicate any right belonging to the corporation as such, the officers authorized to disburse public money may appropriate it to the legitimate expenses of such litigation. To hold this provision to extend further, and to confer upon

the county authorities the power to levy taxes to meet the expenses of litigation generally, without confining it to any particular purpose, would be contrary to the whole spirit and genius of government itself; for, under such a power, the corporate authorities might appropriate the public moneys to the payment of expenses of litigation in which any individual in the county might be interested, and they might, in their discretion, impose the burden of vindicating individual right upon the taxpayers of the community. Such a construction does violence to every conception of the true purposes of government, and therefore the word "litigation," as employed in the paragraph of the constitution above referred to, can only properly be applied to litigation in which the county, as a public corporation, is interested.

The prohibition of the sale of liquor, according to the judgment of a majority of the voters of Morgan county, was a wise and salutary measure. At all events it has been so ordained, and the sovereign power of the State, operating through agencies devoted to that purpose, is pledged to the support of the popular will as expressed at the ballot-box in the election at which it was declared that prohibition should prevail in that county; but in the enforcement of the penal statutes designed to give effect to the prohibition laws, the county as a corporate entity has absolutely no concern, and in aid of litigation arising out of violations or contemplated violations of such law, the corporate authorities have no more power to appropriate money collected by taxation than they have to seize the property of the citizen without the levy of taxes, and thus appropriate it contrary to his will. Indeed, the appropriation of the public money, which was sought to be enjoined in this case, could proceed only upon the grossest possible misconception upon the part of these public officers of the nature of the trust committed to their care. They hold the public funds as the agents of the county in its corporate capacity, to be expended alone to the uses of it as a corporation, and not as the agents of the people of the county in the sense that they could expend it for the uses of the people of that county in their several individual capacities. Public

officers should make a distinction between the corporate entity and the persons who constitute the population of a county; for if perchance they should appropriate public money which came to them through the exercise of the taxing power to purposes other than those for 'which they are authorized by law to expend it, they would not only be guilty of a breach of faith to the county as a corporation, but would be answerable individually for moneys so unlawfully expended by them.

These considerations lead us to the conclusion that the court erred in refusing to grant the injunction prayed for; and the judgment is accordingly

*Reversed. All the Justices concurring.*