JAMES C. ADAMS v. JOHN W. HELMS, COUNTY TREASURER.

[48 South. 290.]

COUNTIES. *Court house insurance. Trust fund. General creditors.*

   The board of supervisors being required (Code 1906, § 307) to mantain a courthouse, and authorized (Code 1906, § 319) to insure the same against loss by fire, the proceeds of fire insurance policies on a burned courthouse, when collected by the county treasurer, do not become a part of the general funds of the county, but constitute a trust fund to be used only to construct a courthouse, and the character of the funds cannot be changed before the county is provided with one.

FROM the circuit court of, first district, Tallahatchie county. HON. SAMUEL C. COOK, Judge.

Adams, appellant, was plaintiff in the court below; Helms, county treasurer of Tallahatchie county, appellee, was defendant there. From a judgment in defendant's favor plaintiff appealed to the supreme court.

The suit was a mandamus proceeding to compel Helms, as county treasurer of Tallahatchie county, to pay a certain warrant held by appellant, which had been legally issued in payment of a valid claim against the county. Payment had been

denied only because there were not sufficient funds in the county treasury with which to pay the warrant. After presentation of the warrant and refusal of payment, the county courthouse was destroyed by fire and the county treasurer collected the proceeds of certain fire insurance policies thereon, and thereafter appellant again presented his warrant and sought to have it paid out of the proceeds of the fire insurance policies. The treasurer declined to make payment, claiming that the proceeds of the insurance policies did not become a part of the general fund of the county for payment of current expenses, but were held by him as a special fund for courthouse purposes only; the board of supervisors having passed an order directing him to hold it as such.

The object of the suit was to compel payment of plaintiffs warrant on the general fund of the county with money collected on the insurance policies.

*Broome & Woods,* for appellant

While it is true that the board of supervisors could have had the courthouse, before appropriating any part thereof to a different purpose, insured in favor of a special fund, or for a particular purpose, yet the fact is that such was not done. The question is not what the county could have done, but what the county did do, not what the county should do, but what the law is.

The law is "that money not otherwise appropriated belongs to the general fund." *San Juan County v. Oliver,* 9 Colo. App. 515, and that "all money belonging to a county, which does not come into the hands of the treasurer in the capacity of trustee, is to be treated as one fund out of which all of its liabilities are to be discharged." *Mentague v. Horton,* 12 Wis. 599.

The order of the board passed in November, 1908, attempts to make nugatory the plain provisions of the statute in reference to the priority of the payment of this warrant, and to postpone the payment of the same in the very teeth of the statute. The board had no authority to pass such an order

The erection of a courthouse involves an extraordinary expenditure, and unless there is a sufficient sum of money on hand the board cannot make a contract for the erection of a courthouse, or issue warrants for such a cause, which will create a debt in excess of its revenues on the basis of a maximum levy of taxes, except in the mode and manner pointed out by law. *Strong v. Monroe County,* 78 Miss. 565, 29 South. 530.

"In their very nature, policies of insurance are not incidents of the property. They are contracts between insurers and assured for indemnity of the assured, and not for loss or damage which another person may have sustained because of the destruction of the property, no matter what the interest of the person may be, as mortgagee, creditor, or otherwise." *Bernheim v Beer,* 56 Miss. 153.

*C. E. Harris* and *H. L. Gary,* for appellee.

The funds, when collected as insurance on the building, did not become a part of the general county fund, but are charged and to be held in trust for the reconstruction of the courthouse. The adverse proposition would be abhorent and entirely out of harmony with the whole scheme of our laws directing the manner of levy and collection of funds for defraying the ordinary and current expense of the county. Code 1906, § 335, provides, "The board of supervisors of each county shall, at its regular meeting in September of each year, levy the county taxes for the succeeding fiscal year." The legislature contemplated the levying of a direct tax each year for the purpose of meeting the ordinary expense of the administration of county affairs. The scheme of the law was that these expenses should be met in this way. As said by Judge ALEXANDER in the case quoted by appellants, *Monroe County v. Strong,* 78 Miss. 565, 29 South. 530: "The scheme of county finances is annual in its nature. A fiscal year is prescribed, and annual statements as to its finances and annual settlements are required. This is implied in the statute, which is at once the course and limitation of the power of the board to impose taxes. They shall have power to

levy such taxes as may be necessary to meet the demands of their respective counties." This levy is annual and the board must look to such persons and property as are subject to state taxes "for the time being," and the levy must be within "the limit that may be prescribed by law." In almost every system of county or municipal finances there must be some distinction between current and absolutely necessary expenses and extra-ordinary expenses for exceptional purposes. This distinction finds recognition in our own statute which provides for priority in payment of county warrants in the order of registration, ex-pressly excepts jury and witness certificates. The boards of supervisors are given the right to borrow upon loan warrants, except warrants to pay judiciary expenses. The statute mani-fests a purpose not only that payment of warrants for such ex-penses shall not be postponed, but that no special tax shall be resorted to for their payment.

MAYES, J., delivered the opinion of the court.

By section 307 of the Code of 1906, the board of supervisors is required to erect and keep in good repair, in their respective counties, a good and convenient courthouse and jail. By sec-tion 319 it is given authority to insure the courthouse and cer-tain other property named therein, the cost of the insurance to be paid out of the county treasury. If the property authorized to be insured is destroyed by fire, money collected on the insur-ance contract takes the place of the property so far as creditors of the county are concerned, and does not become a part of the general county fund, to be paid out on current expenses. It is a trust fund, to be used only for the purpose of replacing the property destroyed, so long as the county stands in need of the thing so destroyed. It required no order of the board to give this effect to the fund. Indeed, no order of the board can change the character of the fund until the county has had the things replaced.                                              *Affirmed.*

FLETCHER, J., took no part in the decision of this case.