## MARKS *et al. v.* RICHMOND COUNTY *et al.*

1. Under the resolution of the commissioners of Richmond County and the notice to voters in pursuance thereof, the bonds voted at the election held in pursuance of said resolution and notice were for the purpose of raising funds for paving stretches of State-aid roads then in existence, and can not be applied to roads not then in existence, or to a State-aid road then existing but, since the election, so materially changed by resurvey or relocation as to amount to the establishment of a new road, and to a virtual abandonment of the old road.

2. When bonds are authorized by popular vote for a particular purpose, the proceeds thereof constitute a trust fund which can not be diverted from such purpose and applied to some other purpose.

3. Under the act of August 10, 1921 (Acts 1921, pp. 199, 201), a county is authorized to appropriate and spend any funds properly applicable to such work, in building and maintaining any State-aid road; and where funds are raised from bonds which are duly voted for the purpose of paving such road, they become a trust fund, and can not be diverted from such purpose upon the grounds, (a) that a new route, which the State Highway Board has adopted in resurveying and relocating the old route, is more feasible, (b) that said board and the Federal Bureau of Roads refuse to furnish any funds with which to pave the old route, and (c) that there has been a violation of duty on the part of the State Highway Board.

4. Query:   Can the State Highway Board, under its authority to resurvey and relocate State-aid roads, change the routes of said roads so mate-

Counties,. 15 C. J. p. 584, n. 65.
Highways, 29 C. J. p. 583, n. 69; p. 605, n. 59 New.

rially as to amount to the establishment of new roads and the abandonment of old ones?

5. The trial judge did not err in overruling the demurrer to the petition, but erred in refusing the injunction prayed by plaintiffs.

Nos. 6171, 6172. DECEMBER 14, 1927.
REHEARING DENIED DECEMBER 17, 1927.

Petition for injunction. Before Judge Franklin. Richmond superior court. July 9, 1927.

W. B. Marks and other persons, as citizens, residents, and taxpayers of Richmond County, filed their petition against that county and its commissioners, to enjoin them from applying any part of a bond issue of $750,000 to the laying out, improvement, and paving of a new road between the cities of Augusta and Waynesboro and connecting them as county-sites, on the ground that this would be a diversion of the proceeds of said bonds from the purpose for which they were voted. The Savannah road, a public highway which had been in existence for more than a century, runs from Augusta, the county-site of Richmond County, through McBean, to the City of Waynesboro, which is the county-site of Burke County. In 1920 the State Highway Department took over this public road as a State-aid road, and relieved said counties from the duty and expense of maintaining it. This highway was entered by said department as a State-aid road on the official map which, as required by law, was filed in the office of Secretary of State, and which under the law is "the authoritative designation of State-aid roads." Since 1920 this highway has been maintained by said department as a State-aid road connecting said county sites. It was known as the McBean route, designated as Route # 21, and marked throughout as such. On October 13, 1925, the board of commissioners of roads and revenues of Richmond County passed a resolution, the pertinent portions of which are as follows:

"Whereas the county authorities of Richmond County, conjointly with the State Highway Department of the State of Georgia, with the use of Federal-aid money, have expended large sums of money in reducing grades, making fills, leveling curves upon the sections of State highways traversing Richmond County, and of building permanent bridges over the streams crossing such stretches of State highways in Richmond County, thereby making them conform to the requirements of the State Highway Department of the State of Georgia and to the United States Govern-

ment, and thereby fitting and preparing such roads for paving; and whereas such highways as now maintained are incapable of standing the wear and tear incident to heavy motor-vehicle travel now passing over them; and whereas the State Highway Department of the State of Georgia, with the use of Federal-aid money will defray one half of the cost of paving the stretches of State highways traversing Richmond County, if Richmond County will defray one half of the expense of paving such sections of State roads; and whereas it will not only be the part of economy at this time to pave such sections of State highways, but the necessity for and the great importance of hard-surfaced highways makes it imperative that such stretches of State highways be paved in their entirety; and whereas it is the sense of this board that an election should be held on the question of issuing $750,000 of paving bonds for paving and improving the stretches of State highways traversing Richmond County;

"Now, therefore, be it resolved by the Board of Commissioners of Roads and Revenues of Richmond County, and it is hereby ordered by the Board of Commissioners of Roads and Revenues of Richmond County, that an election be held on the 19th day of November, 1925, throughout the County of Richmond, for the purpose of determining whether Richmond County shall issue $750,000 of Richmond County paving bonds, bearing four and one half (4-½) per cent. interest per annum, payable semi-annually, all of which bonds to be retired within thirty years, the proceeds from the sale of such bonds to be used for the purpose of improving the stretches of State Highways in Richmond County. Such election shall be held under the following notice, and in accordance with the direction therein contained, to wit:

"Notice of election on issue of $750,000 of paving bonds of Richmond County, for paving and improving the stretches of State highways traversing Richmond County.

"To the qualified voters of Richmond County:

"In pursuance of the constitution of the State of Georgia, as amended, the Board of Commissioners of Roads and Revenues of Richmond County, Georgia, hereby gives notice that an election will be held on the 19th day of November, 1925, to determine the question of whether the County of Richmond, one of the political subdivisions of the State of Georgia, shall issue bonds under the

following specifications: Amount: $750,000. consisting of 750 bonds of the par value of $1,000 each. Purpose: Paving with hard surfacing and improving the stretches of State Highways traversing Richmond County. Interest: Four and one half (4-½) per cent. per annum, payable semi-annually, for which interest coupons are to be attached."

After the publication of the notice provided in said resolution, the election was held and resulted in favor of the issuance of said bonds. On February 26, 1927, the State Highway Board adopted the following resolution: "Meeting State Highway Dept., Feby. 26, 1927. (Route 21.) Whereas the State Highway Board has heretofore ordered a survey for the purpose of relocating the State and Federal route between the cities of Waynesboro and Augusta; and whereas said survey has been completed and the locating engineer, Mr. A. W. Wilson, has made his report to the Engineering Department, and whereas said relocation, as per engineer's report, is satisfactory to the Bureau of Public Roads: therefore be it resolved that said relocation, as per said engineer's report, be adopted as the official route between said cities."

The road sought to be established by this resolution is known as the Peach Orchard route, and is composed of the following three parts: (1) A part of the Hephzibah road, a county road of Richmond County, and on the State highway, which extends from a point on State highway # 21, three miles from the court-house of Richmond County, to a point about twelve miles from said court-house, at Wingfield's Orchard. (2) A stretch of road in Richmond County, not yet laid out or constructed, connecting with said Hephzibah road at said orchard, and extending therefrom to the boundary line between Richmond and Burke Counties. (3) A stretch of road, also not yet constructed, connected with said last-mentioned part at said boundary line, and extending therefrom through Burke County to the City of Waynesboro.

The defendants demurred to the petition, upon the grounds; (a) that it sets forth no cause of action; (b) that it sets forth no order, resolution, notice, or judgment of the State Highway Board adopting the McBean route; (c) that it seeks to collaterally attack an order of the State Highway Board without making that board a party, and this proceeding can not be maintained in the superior court of Richmond County; (d) that plaintiffs can not

maintain a proceeding to set aside the action of the State Highway Board in abolishing the McBean route as an interconnecting county-site highway between said cities, and substituting therefor the Peach Orchard route as such interconnecting county-site highway; and (e) that plaintiffs can not collaterally attack the orders and resolutions of the State Highway Board in the discharge of its official duties and the exercise of power vested in it of laying out and changing interconnecting roads between county sites. The defendants in their answer, after admitting undisputed facts, made these further allegations: On approximately eight miles of the McBean route, beginning at a point at the end of the pavement which extends approximately 3-½ miles from Augusta, the State Highway Board expended State-aid money in the partial resurfacing thereof, but on the rest and residue of said road from said point to the county line no State-aid money was ever expended in construction. On the Peach Orchard route the county has expended a greater sum of money in reconstruction and in erecting bridges than the State Highway Board expended on the McBean route, and the State Highway Board has taken over said road and received the benefit of said expenditure by the county. It is within the authority of the State Highway Board to adopt the Peach Orchard route as the interconnecting county-site highway. Defendants deny that the State Highway Board was without authority to abolish the McBean route and substitute therefor the Peach Orchard route, that the improvement of the McBean route required the expenditure of large sums from the State Highway Department, and that the development and improvement of the Peach Orchard route will require a like expenditure. They deny the allegation that the State Highway Board, if vested with the power of making the above substitution, may from time to time make such substitutions and thus fritter away the highway funds of the State with different roads between two county-sites; and the allegation that they are required by law to specify in the public notice of election the purpose for which the bonds should be issued, and that, having declared such purpose, it would be illegal for them to use the proceeds of said bonds for any other purpose.

On the hearing the further facts appeared: Since the adoption of the resolution of February 26, 1927, the status of the McBean route is that of a detour, and will be maintained by the State

Highway Board as such until the Peach Orchard route has been completed and is ready for traffic. The Peach Orchard route is a shorter and more direct route from Augusta to Waynesboro, and is the most feasible route that can be located between said cities. The Burke County authorities are now constructing the Peach Orchard route; and as soon as it has been constructed and the surface prepared for paving, it is the intention of Richmond and Burke Counties to pave the same, with the aid and co-operation of the State Highway Board and the Federal Bureau of Roads. When it was brought to the attention of the commissioners of Richmond County that neither the State Highway Board nor the Federal Bureau of Roads would participate in paving the McBean route, said commissioners co-operated with the State Highway Board in locating the Peach Orchard route, so that said road might be paved. In the opinion of the chairman of said commissioners the State Highway Board and the Federal Bureau of Roads exercised a wise discretion in relocating said road between Augusta and Waynesboro, and a vast saving will inure to Richmond County by reason of said relocation. The Peach Orchard route runs through the most populous rural section of the county, and passes immediately by and in close proximity to the Richmond County home, the county reformatory, and the town of Gracewood in which is located the State institution for feeble-minded children. When the McBean route was designated by the State Highway Board as the interconnecting county-seat road between said cities, and its maintenance undertaken, it was never located with proper engineering skill. It will continue to be maintained by the County of Richmond. In the original resolution calling for such bond issue, the names of the State highways intended to be paved with the proceeds from said bonds were stated, and the McBean route was left out. The attention of the county authorities was called by the chairman of the State Highway Board to the fact that said resolution should not name the highways, for the reason that some one or more of the highways at that time maintained by the State Highway Department might not be such highways as the Federal Bureau of Roads and the State Highway Department would be inclined to spend money on for hard surfacing. Thereupon the resolution of October 13, 1925, was adopted.

The court overruled the demurrer, but refused the injunction

prayed for, to which refusal plaintiffs excepted. The defendants by cross-bill excepted to the ruling on the demurrer.

*Hamilton Phinizy,* for plaintiffs.

*Pierce Brothers,* for defendants.

HINES, J. (After stating the foregoing facts.) 1. The correct decision of this case depends upon the proper construction of the resolution of the commissioners of Richmond County, adopted on October 13, 1925, which provided for an election on the issue of bonds "for paving the stretches of State Highways traversing" said county; and upon the proper construction of the notice given to voters upon that issue. The whole resolution, including caption, preamble, and all, was published as such notice to the voters. Was it the purpose of this bond issue to provide funds for paving State highways, or stretches of such highways, then in existence, or were the bonds voted for paving State highways which had not been proposed, had not been located, and had no existence at the dates of the passage of this resolution and of the election held in pursuance thereof? A casual reading of this resolution shows that these bonds were voted to pave stretches of State highways then in existence, and not for the purpose of paving State highways which had not been located and had no existence at the times the resolution was adopted and the election was held. The preamble of the resolution recites, that "The county authorities of Richmond County, conjointly with the State Highway Department . . with the use of Federal-aid money, have expended large sums of money in reducing grades, making fills, leveling curves upon the sections of State highways traversing Richmond County, and in building permanent bridges over streams crossing such stretches of State highways in Richmond County, thereby making them conform to the requirements of the State Highway Department . . and to the United States Government, and thereby fitting and preparing such roads for paving;" that "such highways, as now maintained, are incapable of standing the wear and tear incident to heavy motor-vehicle travel now passing over them;" that "the State Highway Department . . with the use of Federal-aid money will defray one half of the cost of paving the stretches of State highways traversing Richmond County, if Richmond County will defray one half of the expense of paving such sections of State roads," that "it will not only be the

part of economy at this time to pave such sections of State highways, but the necessity for and the great importance of hard-surfaced highways makes it imperative that such stretches of State highways be paved in their entirety;" and that "it is the sense of this board that an election should be held on the question of issuing $750,000 of paving bonds for paving and improving the stretches of State highways traversing Richmond County." In the resolution it was directed "that an election be held . . for the purpose of determining whether Richmond County shall issue $750,-000 of . . paving bonds . . the proceeds from the sale of such bonds to be used for the purpose of improving the stretches of State highways in Richmond County." The notice to the voters of the county declared that the purpose of this bond issue was for "paving with hard surfacing and improving the stretches of State highways traversing Richmond County."

Thus it will appear that the resolution refers to State highways upon which the County of Richmond, in conjunction with the State Highway Board and with the use of Federal money, had expended large sums of money in reducing grades, making fills, and eliminating curves upon sections of such highways traversing that county, and in building permanent bridges over streams crossing such stretches of State highways in that county. You can not reduce grades, make fills, and eliminate curves in and from roads which have not been located, and which do not exist even on paper. The reference is to highways which traverse Richmond County. A highway which has no existence can not traverse even Richmond County. In describing these roads the present participle, *traversing,* is used. Thus, by the facts stated and the language used in describing these highways, the clear and unmistakable reference is to roads already built, and not to roads yet to be built. Again, the reference is to "such highways as [are] now maintained," and to highways which "are incapable of standing the wear and tear incident to heavy motor-vehicle travel now passing over them." There can be no heavy motor-vehicle travel over highways which have not been built and which rest in the breasts of the State Highway Board and the commissioners of Richmond County. Even a Ford car can not travel over such a highway. The further reference is to motor-vehicles passing over such roads. Clearly motor-vehicles can not pass over roads which

have not been surveyed, located, or built. Again the reference is to the issuing of $750,000 of bonds "for paving and improving the stretches of State highways traversing Richmond County." A highway which is neither surveyed, located, nor built can not traverse Richmond County. Then in the resolution it is provided that "the proceeds from the sale of such bonds" are "to be used for the purpose of improving the stretches of State highways in Richmond County,"—then in that county; not to stretches of highways which may in the future be found in that county. The resolution and the notice deal with the present, not the future. The bonds were voted to pave roads then in esse, and not to roads which might come into existence in the future. Such funds are available for paving stretches on existing routes, and not for construction on a new line for a part of the way, constituting a material departure. Thompson *v.* Pierce County, 113 Wash. 237 (193 Pac. 706). The provision for paving stretches of State highways traversing the county implies the prior existence of such highways and such stretches. Ames *v.* Trenton Brewing Co., 56 N. J. Eq. 309, 317 (38 Atl. 858); Wolff Chemical Co. *v.* Philadelphia, 217 Pa. 215 (66 Atl. 344). So we are of the opinion that the funds arising from these bonds can not be applied to paving or other work on the Peach Orchard route.

2. These bonds having been voted for the purpose of paving stretches of State highways which were then in existence and which then traversed the County of Richmond, the funds arising from their sale could not be diverted from that purpose and applied to the laying out or paving of new State highways which the State Highway Board might determine to establish, nor to paving stretches of a relocated State highway the location of which was determined upon after the election, especially when such relocation involves material changes in the route and amounts to a virtual abandonment of a State highway which was in existence when the election took place, and stretches of which were improved and ready for pavement. Funds raised by a bond issue for a specific purpose by popular vote can not be diverted to any other purpose whatsoever. They constitute trust funds to be used only for the purpose for which the bonds were voted. Adams *v.* Helms, 95 Miss. 211 (48 So. 290); Red River Valley Nat. Bank *v.* Fargo, 14 N. D. 88 (103 N. W. 390); State *v.* Mikkelson, 24 N. D. 175

(139 N. W. 525); Thompson v. Pierce County, supra; Wolff Chemical Co. v. Philadelphia, supra; Major v. Aldan Borough, 209 Pa. 247 (58 Atl. 490). The voters might not have voted for this large issue of bonds, if the roads on which the proceeds of the bond issue were to be spent were not then in existence, and if such roads were in the future to be established and located by the county authorities or the State Highway Board. Good faith with the voters requires that these funds should be used in paving State-aid roads which had been designated at the time of the passage of this resolution and which were in existence at the date of the election.

3. The diversion of these funds can not be justified upon the ground that the new route is more feasible than the old one, or upon the ground that the State Highway Board and the Federal Bureau of Roads refuse to co-operate with the county authorities in paving the old route, or on the ground that the State Highway Board has selected and designated the new route as a State-aid road, or on the ground of any violation of duty on the part of the State Highway Board in the premises. Section 2 of the act of August 10, 1921 (Acts 1921, pp. 199, 201), in part provides "that nothing in this provision or in any other provision of this law shall be construed to mean that the county can not appropriate and spend any funds they desire on building and maintaining any of the State-aid roads." 8 Park's Code Supp. 1922, § 828(vvv). Under this provision, when the State Highway Board designates a county-site road and assumes its maintenance, the county can still appropriate and spend funds for building and maintaining such road. The county authorities are thereby authorized to submit to public vote a bond issue for the purpose of raising funds for building and maintaining a State-aid road, although they are not required so to do; and when such bonds are voted and funds are raised from such bond issue for such purpose, they must be applied to the building and maintenance of such roads. They become a trust fund for such purpose, and can not be diverted therefrom, although the State Highway Board may abandon such State-aid road. The abandonment of such State-aid road by the State Highway Board, even if it has the authority so to do, will not authorize the county authorities to apply such funds to the building and maintenance of a new county-site

road which that board may determine to establish, or to a re-located road when such relocation involves such material changes in the old road as amount to an abandonment thereof.

4.  In view of what we have said, it becomes unnecessary to determine whether the State Highway Board, after taking over an interconnecting county-site road, and after having designated it as a State-aid road, and having thus relieved the county from the duty of maintaining such highway, can, by its power to resurvey and relocate such highways, make such changes in existing county-site routes as amount virtually to their abandonment.  This is a question of serious importance; but as it is not necessary to decide it in order to properly dispose of the case in hand, we do not un-dertake to pass upon it.

5.  In view of the rulings set out in the first and second divisions of this opinion, we think the court did not err in over-ruling the demurrer to the petition, but did err in not granting the interlocutory injunction sought by the plaintiffs.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill.  All the Justices concur, except Russell, C. J., and Atkinson, J., who dissent.*