TEMPLEMAN *v.* JEFFRIES, ordinary.

896

No. 8200. JUNE 12, 1931.

*King & Partridge,* for plaintiff.

*B. L. Milling* and *Mitchell & Mitchell,* for defendant.

HINES, J. Upon the petition of Duffell, in which he alleged that Templeman was a person of unsound mind and that a guardian should be appointed for his person and property, the ordinary appointed a commission consisting of two physicians and an acting solicitor-general of the Atlanta Circuit, to examine Templeman by inspection and to hear and examine witnesses under oath, if necessary, as to his condition, and to make return of such examination and inquiry to the ordinary, specifying in the return under which class they found Templeman to be. The commission thus appointed made their return in which they found that a guardian should be appointed for the person and property of Templeman.

Thereupon Templeman filed in Fulton superior court his peti-

tion in which he sought for the writ of prohibition to prevent the ordinary from appointing a guardian for his person and property, upon the ground that the above commission was not legally constituted. He based his attack upon the commission upon the ground that Charles B. Shelton, Esq., was the county attorney of Fulton County, and should have been appointed a member of the commission, and that, if he was not such county attorney as contemplated by the law under which the commission was appointed, there was a solicitor of a city court in Fulton County, to wit John S. McClelland, Esq., solicitor of the criminal court of Atlanta who should have been appointed on the commission. A further ground of the petition was that the return of the commission did not specify in what class of insane or mentally defective persons the commission found him to be. In his answer to this petition the ordinary set up that there was neither a county attorney in Fulton County, nor a solicitor of a city court in said county, and that for this reason neither one of said officers could be appointed upon the commission to examine Templeman. The ordinary further alleged that the return of the commission was valid. On the hearing it appeared that the county commissioners of Fulton County had, by an order passed on January 2, 1930, and spread upon their minutes, appointed Charles B. Shelton, Esq., county attorney for Fulton County for the year 1930, or at their will and pleasure; and by the same order fixed his salary. Upon the facts appearing as above stated the trial judge refused to grant the writ of prohibition, and to this judgment the petitioner excepted.

The first question for decision is whether there was a county attorney for the County of Fulton at the time the commission was appointed to examine Templeman, who should have been appointed on the commission. The proceeding in this case was under the act of August 20, 1918. This act provides that "Upon the petition of any person on oath, setting forth that another is liable to have a guardian appointed," the ordinary "shall issue a commission directed to three reputable persons, two of whom shall be practicing medical physicians in good standing, said physicians to be residents of the county, if that number reside therein, and the county attorney or solicitor of any city court located in said county, and if no county attorney or solicitor of said city court, the solicitor-general of the circuit or some attorney of the county appointed by

him, requiring them to examine by inspecting the person for whom guardianship or commitment to the sanitarium is sought," etc. Acts 1918, p. 162; 9 Park's Code Supp. 1922, § 3106(a). Under this law, if there was a county attorney in Fulton County at the time this commission was appointed, such county attorney should have been appointed as a member thereof. As far as we have been able to discover, there is no general statute in this State which provides for the appointment, election, or employment of county attorneys, except in one instance, and that is where a county-manager form of government is established in any county, in which case the board of county commissioners of roads and revenues in such county can employ a county attorney. Acts 1922, pp. 83, 89; 12 Park's Code Supp. 1926, § 855(19). We take judicial cognizance of the fact that this form of county government has never been in existence in Fulton County. So the question arises, has the board of commissioners of Fulton County, in the absence of express legislative authority, implied power to appoint a county attorney? The board of county commissioners of Fulton County was created by the act of December 3, 1880. Acts 1880-81, p. 508. By this act large powers are conferred upon the commissioners. They are given exclusive jurisdiction and control in the management of all the property of the county, according to law; in levying taxes according to law; in establishing, altering, or abolishing roads, bridges, and ferries in conformity to law; in establishing and changing election precincts and militia districts; in supervising the tax-collector's and tax-receiver's books, and in allowing the insolvent list for the county; in settling all claims against the county; in examining and auditing all claims and accounts of officers having the care, management, keeping, collection, or disbursement of money belonging to the county or appropriated for its use and benefit, and in bringing them to a settlement; in making rules and regulations for the support of the poor of the county, and for the promotion of health; in regulating peddling; and they are further authorized to exercise such other powers as are granted by law or as are indispensable in their jurisdiction over county matters and county finances. By the act of September 29, 1881 (Acts 1880-81, p. 546), they are authorized and empowered to exercise all the powers which could lawfully be exercised by the inferior court when sitting for county purposes, or by the justices thereof, at the

time of the abolition of the inferior courts, except as to proceedings and records in cases of lunacy. By this act they were given exclusive jurisdiction and power over all acts theretofore passed, and of force, relative to county matters applicable to Fulton County. There are various other matters over which these county commissioners have control under the general laws of this State to which specific reference need not be made.

By the constitution of this State the General Assembly is authorized to delegate to any county the power to levy a tax "for litigation." Civil Code (1910), § 6562. The litigation referred to in this provision of the constitution is such litigation as involves the rights of the county as a corporation only. *Koger* v. *Hunter*, 102 *Ga.* 76 (29 S. E. 141); *DeVaughn* v. *Booten*, 146 *Ga.* 836 (92 S. E. 629). Each county of this State is a body corporate with power to sue or be sued in any court. Civil Code (1910), § 383. In suits against a county the fiscal affairs of which are committed to a board of commissioners, service on the county may be perfected upon a majority of the commissioners. Civil Code (1910), § 385. Such suits have to be defended by the county commissioners in the name of the county. They can not be defended without an attorney. From the general powers conferred upon the commissioners of Fulton County, as set out above, and by general laws to which no specific reference has been made, the commissioners are by clear implication authorized to employ counsel to defend suits brought against the county in civil matters. This power has been recognized by the decisions of other courts. A county generally has, in the absence of express authority, implied statutory authority, through its proper officers or agents, usually the county board, to employ counsel to represent the county in civil suits in which the county is interested, or to which the county is a party. 15 C. J. 547 (§ 239) (2). The power to control the fiscal affairs of a county carries with it the power to employ counsel. Jefferson County *v.* Jefferson County Fiscal Court, 161 Ky. 538 (170 S. W. 1171). In Eagle River *v.* Oneida County, 86 Wis. 266 (56 N. W. 644), the Supreme Court of Wisconsin held that a county "has the legal capacity to sue and be sued, and to appeal to the Supreme Court, and it is its duty, by implication, when it has a case pending in the Supreme Court, to attend to it and see that it is properly presented to that court; and, connected with such a duty,

it must have the power to employ legal counsel for such purposes; and as it has such power, it must have the power to direct or authorize some one to employ such counsel for and on its behalf." In Duluth &c. R. Co. v. Douglas County, 103 Wis. 75 (79 N. W. 34), the Supreme Court of Wisconsin again held that a county board, having appealed a case to that court, had by implication the power to employ an attorney to prosecute the case in that court, the district attorney of the county not being obliged to attend to its litigation in the Supreme Court. In Doster v. Howe, 28 Kan. 352, it was held that where a county attorney commences an action in the name of the State against the board of commissioners, and, on an adverse decision in the district court, takes the case to an appellate court, the county board may make a legal and valid contract with an attorney to defend the case in the appellate court. In Franklin County v. Layman, 34 Ill. App. 606, it was held that to defeat the collection of a tax claimed to be illegal, the county board had power to employ counsel under a statute empowering them "to do all other acts in relation to the concerns of the county." In Speer v. Board of Commissioners, 88 Fed. 749 (32 C. C. A. 101), the Circuit Court of Appeals of the 8th Circuit held that "A temporary board of commissioners, appointed under the laws of Kansas on the organization of a new county, has power to employ attorneys to protect the interests of the county, and to advise its officers until the election of a county attorney."

Furthermore, we are of the opinion that the board of county commissioners of Fulton County has the implied authority to employ counsel to advise it in the discharge of its duties, in the preparation of the innumerable orders which it must pass, in the making of various contracts which it must execute in behalf of the county, and in other transactions in which the county engages. Without the aid of competent legal advice it would be difficult, if not impossible, for the county commissioners to discharge their various duties in a proper and satisfactory manner. Having reached the conclusion that the county commissioners are authorized by clear implication to employ counsel or the county, we see no good reason why such authority should be confined in its exercise to cases or occasions requiring the employment of counsel. This would necessitate various contracts of employment, or various appointments of counsel, to meet the oft-recurring necessities of the county.

A regular county attorney could render better service than attorneys occasionally employed in the legal business of the county. The appointment of a regular county attorney to represent the county and to advise the commissioners in the discharge of the various matters in which the county engages could be secured more cheaply than by the employment of counsel pro hac vice. So we are of the opinion that the county commissioners of Fulton County acted within the scope of their authority when they appointed Mr. Shelton to the position of county attorney for Fulton County. This being so, under the act of 1918 he should have been appointed as a member of the commission to examine the person for whom guardianship was sought in the proceeding before the ordinary.

■ But it is insisted that the employment of Mr. Shelton was invalid and void, because there was no formal contract of his employment by the county in writing signed by both him and the county, and spread upon the minutes of the county commissioners. This contention is based upon the provisions of section 386 of the Civil Code, which declares that "all contracts entered into by the ordinary with other persons in behalf of the county must be in writing and entered on their minutes." We do not think that the appointment of Mr. Shelton was invalid for the reason assigned. We have seen that under the law creating the board of commissioners of Fulton County that body had implied legislative power to appoint a county attorney. Where a statute by implication authorizes the county commissioners to appoint an officer in and for a county, the action of the commissioners in so doing is done by them as an agency of the State. The relation between the county and the county attorney does not rest upon contract, but arises from appointment authorized by a legislative enactment. The power and authority to appoint a county attorney comes from the legislature and the people. *Commissioners of Roads* v. *Shorter, 50 Ga.* 489, 508. An individual who has a designation or title given him by law, and who exercises functions concerning the public, assigned to him by law, is a public officer. *Bradford* v. *Justices, 33 Ga.* 332. An office is a public station or employment conferred by the appointment of the government. Any one is a public officer who is appointed by the government and has any duty to perform concerning the public. Nor does it matter that his authority or duty is confined to very narrow limits. *Polk* v. *James, 68 Ga.* 128;

*Wiley* v. *Sparta,* 154 *Ga.* 1, 14 (114 S. E. 45, 25 A. L. R. 1342). The title of the county attorney to his office rests upon an implied legislative power conferred upon the commissioners, and not upon a contract made by the commissioners and the attorney. This is true although the legislature leaves to the commissioners the authority to designate the attorney and to fix his salary. Under the power to appoint the attorney and fix his salary, the office being created by necessary implication from the statute creating the board of county commissioners, the transaction does not constitute a contract between the county and the attorney within the meaning of the above section of the code. If the legislature had by statute expressly created the office of county attorney whose duties were fixed and prescribed by law or otherwise indicated with reasonable certainty, and had left to the county commissioners the designation of the person to fill such office and the fixing of his salary, then the passage of a resolution by the commissioners designating the appointee, fixing his term and his salary, and spread upon their minutes, would effectually execute the power conferred upon the commissioners; and would result in the establishment of the appointee in the office of county attorney, when the appointee accepted the appointment, without a formal contract in writing signed by the appointee and the county. The same result follows under the circumstances above stated, when the county commissioners act under an implied power clearly derivable from the statute creating that body. The execution of such power by the passage of such resolution by the county commissioners does not constitute the making of a contract within the meaning of the section of the code with which we have been dealing.

 Having held that the county commissioners were authorized to appoint a county attorney, and that there was a county attorney in office at the time the ordinary appointed the commission to examine Templeman, who should have been appointed on the commission, what was the effect of the failure to appoint this officer on the commission? This act of 1918 is to be strictly construed. *Morton* v. *Sims,* 64 *Ga.* 298; *Singer* v. *Middleton,* 135 *Ga.* 825 (70 S. E. 662). By this act no guardian shall be appointed for the estate of a person nor shall such person be committed to the sanitarium except upon the return of the commission appointed in the manner prescribed by this act, finding that a guardian should

be appointed for such person or that he should be committed to the State Sanitarium. · This means that the commission must be such a one as is required by this act. The act requires that the county attorney shall be appointed on the commission when there is such a county attorney. If there is such attorney and he is not appointed, the commission is illegally constituted, and its return does not confer upon the ordinary jurisdiction to act in the matter. Under this statute the ordinary exercises a special and limited jurisdiction, which can only be exercised when the requirements of this act as to the appointment of the members of the commission are complied with. Failure to appoint such an officer rendered the return of the commission void; and in this situation the ordinary was without jurisdiction to appoint a guardian for the person and property of Templeman. The ordinary being without jurisdiction to make the appointment, by reason of the illegal appointment of the commission and in consequence of lack of a valid return by the commission, the writ of prohibition would lie to enjoin the ordinary from appointing a guardian for the person and property of the party for whom guardianship was sought. Civil Code (1910), § 5458.

■ Petitioner further sought the writ of prohibition to enjoin the ordinary from appointing a guardian for his person and property, upon the ground that the return of the commission was illegal and void for the reason that it did not specify whether petitioner was found to be "an idiot, a lunatic, an insane person, a deaf and dumb person incapable of managing his estate, an habitual drunkard, or a person imbecile from old age or other cause and incapable of managing his estate." The return of the commission in this case was not illegal and void for this reason. By the act of 1918 the ordinary appoints the commission therein provided for, requiring them to examine by inspection the person for whom guardianship or commitment to the sanitarium is sought, and to hear and examine witnesses on oath, if necessary, as to his condition and capacity to manage his estate, and to make return of such examination and inquiry to the said ordinary, specifying in such return under which class they find said person to come. This provision of the statute does not require the commission to specify in what class of mental defectives falls the person for whom guardianship or commitment to the sanitarium is sought. This provision requires the commission to specify whether such person should have a guardian ap-

pointed for his person and property, or whether he should be committed to the sanitarium. In the present case the commission in their return found that Templeman was liable to have a guardian appointed for his person and property. This sufficiently specified that the person whose mental condition the commission was inquiring into fell among the class for whom a guardian should be appointed for his person and property, and in effect that such person did not fall among the class who should be committed to the sanitarium. So the report of the commission was not illegal and void for the reason assigned. The contention of his counsel is based upon an improper construction of the act under which this proceeding was brought.

■ Having found that there was a county attorney in Fulton County and that he should have been appointed on the commission, it becomes unnecessary to consider the question whether there is a solicitor of any city court in Atlanta who should have been appointed to serve on such commission, if there had been no county attorney.

■ Applying the principles ruled in the first, second, and third divisions of the opinion, the trial judge erred in denying the writ of prohibition. *Judgment reversed. All the Justices concur.*