38813. WHEELER v. DeKALB COUNTY et al.
38814. DeKALB COUNTY et al v. WHEELER et al.

GREGORY, Justice.

This suit was brought by the presiding judge of the Juvenile Court of DeKalb County to determine whether his court or the DeKalb County Board of Commissioners have the power, duty and responsibility to operate the DeKalb County juvenile detention and care facilities.

In 1973, DeKalb County constructed the facilities at issue from funds derived from the sale of bonds issued in 1970 for the purpose of

". . . building and equipping modern and adequate facilities for the custody, care and rehabilitation of juveniles under the direction of the juvenile court . . ." The facility, designed and constructed for a capacity in excess of 170 beds, has been used for that purpose since 1973 and has had an average daily population for the past four years of less than forty juveniles. At the time of construction, counties operated their own juvenile detention centers without a central state organization.

From the time of its construction until July 1, 1981, the DeKalb County juvenile detention facility was county funded and operated under the supervision of the juvenile court of DeKalb County.

In 1980, however, Georgia's "Children and Youth Act" (Ga. Laws 1963, p. 81) (Code Ann. Ch. 99-2) was amended so as to "provide that county juvenile detention centers shall be transferred to the Department of Human Resources, Division of Youth Services." Ga. Laws 1980, p. 1046. Specifically, Code Ann. § 99-213 was amended by adding the following new subsection (n):

"(n) Effective July 1, 1981, all juvenile detention facilities operated by counties shall be transferred to the control and jurisdiction of the Department of Human Resources, Division of Youth Services, and, thereafter, shall be operated as facilities of said Department and Division. Until such time as county juvenile detention centers are transferred to the Department and Division, as provided herein, the General Assembly may appropriate funds to the Department of Human Resources, Division of Youth Services, to reimburse or partially reimburse counties for the cost incurred by such counties in operating such facilities; provided, however, that this subsection shall not become effective unless those counties which maintain their own juvenile detention facilities, including Fulton, Chatham and DeKalb Counties, transfer and deed to the State of Georgia the real and personal property which comprises the offices, facilities and equipment of such detention facilities if such property is desired by the State of Georgia." Ga. Laws 1980, pp. 1046, 1047.

At the same time, the first sentence of Code Ann. § 24A-603, dealing with personnel of the juvenile courts was amended. Before this time, the sentence read, "Personnel. The judge of the juvenile court shall have the authority to appoint clerks, employees of the detention home, and any other personnel necessary for the execution of the purposes of this title, and their compensation shall be fixed by the judge, with the approval of the governing authority of the county." (Ga. Laws 1971, p. 718). The amendment deleted the following language from that sentence: "employees of the detention home." Ga. Laws 1980, pp. 1046, 1047.

In June, 1981, DeKalb County entered into a contract with the Georgia Department of Human Resources, Division of Youth Services, whereby the county agreed to retain and operate the juvenile detention center, to house youths from DeKalb County and any other youths assigned by the Department, and the State agreed to reimburse the county for its services at a fixed daily rate per child. The juvenile detention center was not transferred or deeded to the State of Georgia. There was undisputed testimony at trial that DeKalb County offered to transfer the facilities to the State in 1980, but the State did not desire to acquire title to the property and facilities due to the size and structural defects of the facility.

Between 1980 and 1982, the sheriff and board of commissioners studied the problems of the adult and juvenile detention facilities in DeKalb County. It was the opinion of the sheriff that DeKalb's juvenile detention center was being seriously underutilized at a time when DeKalb's adult detention facilities were overcrowded.[1] The sheriff further stated that, in his opinion, the only way to expeditiously relieve the overcrowded conditions at the adult detention facilities would be by converting the juvenile detention center for that use.

On March 30, 1982, at a special meeting called to take steps necessary to relieve the critical overcrowding at the jail, the board of commissioners acted to transfer the juvenile detention facilities to the sheriff. The board had already reached an agreement with the Department of Human Resources regarding future detention facilities for DeKalb County juveniles.[2]

The presiding judge of the Juvenile Court of DeKalb County challenged this action by the board of commissioners and refused to assign DeKalb juveniles for detention to any facility outside DeKalb County. He brought suit in his capacity as presiding judge of the

---

[1] There is a class action suit presently pending against DeKalb County in the United States District Court for the Northern District of Georgia under the provisions of the Federal Civil Rights Act, 42 USCA § 1983, challenging the conditions of the DeKalb County jail. One of the allegations in the suit is that the overcrowding at the jail constitutes a violation of the Eighth Amendment to the United States Constitution's prohibition against cruel and unusual punishment.

[2] The board of commissioners and the Department developed a plan which would utilize the juvenile detention center which DeKalb County had used prior to 1973. The county agreed to refurbish the old detention center so that it could adequately accommodate 28 male juveniles. The State agreed to assume responsibility for DeKalb's female juveniles (who would be quartered in Gwinnett County facilities) and any male juveniles who could not be accommodated in the refurbished DeKalb facility. The county will operate the facility and the State will reimburse the county for its services at a fixed daily rate per child.

juvenile court and individually as a citizen, taxpayer, and qualified voter of DeKalb County against the chairman and members of the board of commissioners of DeKalb County, DeKalb County, and the sheriff of DeKalb County seeking injunction, mandamus and declaratory judgment. The chairman and members of the board, the sheriff, and DeKalb County then filed a petition for writs of prohibition, mandamus and injunction against the judge.

The case came to trial in April 1982, and the trial judge granted the relief sought by the board of commissioners and DeKalb County. The trial judge found that: (1) There is no requirement of law that DeKalb County or its juvenile court must operate their own juvenile detention center; (2) The State of Georgia has the responsibility for the care and detention of juveniles in Georgia, and it meets that responsibility by operating its own facilities in 157 counties and by contract in DeKalb and Fulton Counties; (3) the DeKalb board of commissioners have the power and discretion to operate a juvenile detention facility and that discretion includes the right to designate the buildings to be used for that purpose; (4) the board of commissioners acted within their discretion when they declared the juvenile detention facilities built in 1973 to be obsolete for its intended purpose and designated the facility to be used for purposes other than those specified in the bond issue; (5) the employees of DeKalb's juvenile detention facilities are under the control and supervision of the county governing authority rather than the juvenile court.

The trial judge also made the following finding regarding attorneys' fees: "The judges, DeKalb Superior Court en banc, determined that it was necessary for the Honorable Edward D. Wheeler, in his capacity as Presiding Judge of the Juvenile Court of DeKalb County, to appoint counsel to represent him in this matter. The question of compensation and the amount thereof is reserved to the discretion of the judges of the DeKalb Superior Court."

The juvenile court judge appeals from that portion of the trial judge's order which granted relief to DeKalb County, et al., and DeKalb County cross-appeals on the question of the award of attorneys' fees. We granted an expedited appeal, based on the parties' motion. For reasons which appear below, we affirm as to the main appeal and reverse on the question of attorneys' fees.

(1) Appellant alleges that the trial judge's findings are erroneous because the Georgia Code still requires DeKalb County to operate a juvenile care and detention center under the supervision of the juvenile court. He argues that Code Ann. § 99-213 (n) did not give the State Department of Human Resources the responsibility for the care and detention of DeKalb juveniles because the county failed to

transfer and deed its detention facilities to the State as a required condition precedent to the State's assumption of responsibility. We disagree.

By its terms, Code Ann. § 99-213 (n) required certain counties, including DeKalb, to transfer and deed their facilities to the State before the State would assume the responsibility for the care and detention of their juveniles only where "... such property is desired by the State of Georgia." It is clear from the testimony in this case that DeKalb County offered in 1980 to make such a transfer, but the State did not desire to acquire title to the DeKalb detention facilities. The statutory requirements of § 99-213 (n) were met, and pursuant to that statute, the State assumed control and responsibility for the operation of the juvenile detention program in DeKalb County on July 1, 1981. The State met its responsibilities by entering into a contract whereby DeKalb County operates a licensed juvenile detention center during the contractual period, and the State reimburses the county for its services at a fixed daily rate per child.

Additionally, we find no requirement under Code Ann. Title 24A, the Juvenile Court Code of Georgia, that any county must operate its own juvenile detention facilities where the Department of Human Resources, Division of Youth Services has already assumed control and responsibility for the operation of the juvenile detention program in that county. The trial judge's findings on this question were not error.

(2) Appellant also alleges that the trial judge erred because the voters of DeKalb County, by approving the bond issue for construction of a new juvenile detention facility, imposed a trust upon the facility erected by the use of such funds which cannot be abandoned in the discretion of the county governing authority.

Appellant cites the following cases for the proposition that bond funds authorized by popular vote for a particular purpose constitute trust funds which cannot be diverted to another and different purpose. *Lindsey v. Guhl,* 237 Ga. 567 (229 SE2d 354) (1976); *Luther v. DeKalb County,* 229 Ga. 18 (189 SE2d 387) (1972); *Touchton v. Echols County,* 211 Ga. 85 (84 SE2d 81) (1954); *Walker v. Wheeler,* 210 Ga. 432 (80 SE2d 691) (1954); *Board of Education v. Gray,* 203 Ga. 583 (47 SE2d 508) (1948); *City of Cornelia v. Wells,* 181 Ga. 554 (183 SE 66) (1935); *Allen v. City of Atlanta,* 166 Ga. 28 (142 SE 262) (1927); *City of Fayetteville v. Huddleston,* 165 Ga. 899 (142 SE 280) (1927); *Marks v. Richmond County,* 165 Ga. 316 (2) (140 SE 880) (1927). Each of these cases deals with the expenditure of bond funds rather than the use of a public building which has been constructed by bond funds. A different situation is presented when the county, some ten

years after the construction of a building paid for by a specific bond issue, seeks to change the use of that building to a different purpose than was originally expressed by the bond issue.

As the cases cited above clearly show, bond funds for particular construction projects must be used only for that purpose. This does not mean, however, that for all time, this building may only be used for that purpose. If the circumstances which give rise to a particular bond issue change so that the building constructed from those funds is no longer needed for that purpose, it would be senseless to require that the building continue to be used for its original purpose. We will not require this.

The board of commissioners, as the governing authority of DeKalb County, has the duty to maintain and exercise control over county property, and this duty co-exists with the duty to exercise that control for the benefit of the county. *Smith v. Board of Commrs.,* 244 Ga. 133, 134 (259 SE2d 74) (1979). See Code Ann. §§ 91-701, 23-701, 91-705; Ga. Laws 1956, p. 3237, Sec. 12, as amended. By virtue of this authority, the board has the right to deny the use of any public property if it is used in a wasteful or ineffective manner. *Wolfe v. Huff,* 232 Ga. 44, 46 (205 SE2d 254) (1974); *McDonald v. Marshall,* 185 Ga. 438 (195 SE 571) (1938). In cases where the public property is a building constructed from the funds of a designated bond issue for a particular use, the board may change the intended use of the building when the circumstances which gave rise to the bond issue change so that the building constructed from those funds is no longer needed for that purpose, and its continued use for that purpose would be a waste of the county's resources. This exercise of discretion by the board will not be disturbed by the courts in the absence of fraud or gross abuse. *Lindsey v. Guhl,* 237 Ga. 567, 571, supra.

The trial court found that there was no gross abuse of discretion by the board of commissioners in this case. The juvenile detention facility at issue was authorized and constructed at a time when each county was responsible for housing all of its own juveniles. A modern facility large enough to accommodate an average daily population of 170 male and female juveniles was built. At that time, the county's adult detention facilities were considered adequate. Since that time, however, circumstances have changed. The State laws have changed so that the Department of Human Resources now has the responsibility for housing detained juveniles throughout the state. To meet that responsibility, the state does not need the DeKalb facility. The sheriff of DeKalb County does, however, need that facility to alleviate severe overcrowding in the adult detention facilities. While the merits of this decision by the board are hotly contested by the parties in this case, it is clear that the trial court

could reasonably find that the board did not grossly abuse its discretion.

The trial court did not err in finding that the board of commissioners acted within their discretion in transferring DeKalb County's former juvenile detention facility to the sheriff for conversion to an adult detention facility.

(3) Appellant finally alleges that the trial court erred in finding that the employees of DeKalb's juvenile detention facility are within the control and supervision of the county governing authority rather than the juvenile court. We find no error.

Employees of county juvenile detention homes were formerly under the control of the county juvenile courts. See Ga. Laws 1971, p. 718. This control was removed in 1981, however, when the Department of Human Resources assumed control and responsibility for the juvenile detention centers throughout the state. See, Ga. Laws 1980, pp. 1046, 1047. As a matter of law, the juvenile detention facility employees were no longer under the control of the juvenile court beginning on July 1, 1981. As permanent county employees under the DeKalb County merit system, they are subject to the county personnel code and under the control and supervision of the board of commissioners. The board can continue to run its juvenile detention facility administration through the juvenile court, as it was required to do in the past, but it does not have to do so.

(4) The final issue to be resolved is the question of attorneys' fees. We find no authority under the facts of this case for an award of attorneys' fees.

*Judgment in case no. 38813 affirmed; 38814 reversed. All the Justices concur, except Hill, P. J., and Smith, J., who dissent as to division (4) only.*

DECIDED JULY 12, 1982.

*Simmons, Warren & Szczecko, Joseph Szczecko,* for appellant (case no. 38813).

*George P. Dillard,* for appellees (case no. 38813).

*George P. Dillard, Gail C. Flake,* for appellants (case no. 38814).

*Joseph Szczecko, James E. Spence, Jr.,* for appellees (case no. 38814).

HILL, Presiding Justice, dissenting.

When a county officer is sued, or is required to file suit, the county attorney represents him or her. But when the county governing authority sues, or is sued by, a county officer, the county

attorney represents the county governing authority and the county refuses compensation to the county officer's attorney. County officers should not be required to solicit lawyers to provide them with free legal representation and in this day when it appears that everyone is entitled to be represented by counsel, it seems unconscionable to me that counties can deprive county officers of the benefit of counsel.

Counties have the implied power to employ a county attorney. See *Templeman v. Jeffries,* 172 Ga. 895 (1) (159 SE 248) (1931).[1] If county governing authorities have the implied power to employ counsel, county officers should have the implied power to employ counsel where the county attorney cannot represent the county officer.

The majority say, but do not explain why, attorney fees are not authorized "under the facts of this case." In a unanimous opinion rendered last month, *Grimsley v. Twiggs County,* 249 Ga. 632 (292 SE2d 675) (1982), this court clearly implied that attorney fees may be awarded for legal services to a county officer in the discretion of the court.

The "facts of this case" referred to by the majority cannot be that the county officer was the plaintiff, or that he failed to prevail on the merits, because the county attorney is compensated when the county is the plaintiff, and when the county loses. (Patti Grimsley was the plaintiff in *Grimsley v. Twiggs County,* supra.)

The "facts of this case" referred to by the majority may be that this is not an "inherent power" case whereas *Grimsley v. Twiggs County,* supra, was. *Grimsley* was an "inherent power" case on its merits, but this court did not say there that the separate issue of attorney fees came under the inherent power of the court. And if the trial court in *Grimsley* had the inherent power to award attorney fees in its discretion, then why not here? I was of the opinion that courts had not only the inherent power but also the inherent duty to treat litigants before them fairly and even-handedly. I therefore dissent in Case No. 38814 (division 4 of the majority opinion).

While I dissent, I cannot approve the trial judge's poll of the DeKalb Superior Court judges in deciding whether to award attorney fees. Nevertheless, their determination that attorney fees were warranted is indicative to me that county officers are entitled to legal representation. I would remand for the trial judge to exercise his discretion in awarding attorney fees. *Grimsley v. Twiggs County,* supra. After all, even though the plaintiff was not successful on the

---

[1] A county under the county manager form of government has express statutory authority to employ a county attorney. Code § 23-917.

merits, the county has benefited by having this matter litigated and resolved now, rather than sometime later.

I am authorized to state that Justice Smith joins in this dissent.