DAVIS *et al. v.* JACKSON & KING.

1. The verdict is sustained by evidence and law.
2. Grounds for new trial not insisted upon either in the argument before this court or in the brief of counsel, will not be considered.
3. There was no error in refusing to grant a nonsuit.
4. If attorneys were employed, at an agreed fee, to recover land for their client from another, and obtained a decree compelling such other to reconvey the land to the client upon the payment by him of a certain sum, and if it were not their duty, according to the terms of the contract made, to furnish the money which, under the decree, was to be tendered, but the duty of the client, and the client neglected to raise the money within a reasonable time, though

duly notified of his duty and requested to raise it by the attorneys, they would not be deprived of their lien; it would attach to the land as against the client, and he could not divest it by declining or refusing to raise the money, or by delaying to do so for several months and then paying it and procuring the deed to be made to his wife and son instead of himself.

5. An attorney is not deprived of the lien given him by the code, by taking the note of his client for his fee.

November 10, 1890.

Attorney and client.   Liens.   Practice.   Nonsuit. Verdict.   Before Judge MARSHALL J. CLARKE.   Fulton superior court.   March term, 1890.

Jackson & King by their petition alleged that about May 27, 1882, they were employed as attorneys at law for Henry Davis, to sue for and recover in his behalf from one Morris a certain described tract of land, and to have cancelled and delivered up by Morris a deed which he held to the land, executed by Davis and his wife, or to have Morris forced to redeed the land to Davis; that Davis and his wife had deeded the land to Morris to save him harmless against any liability assumed by him in having gone upon the bond of Davis, and also to secure Morris in the payment of $50 and interest, which Davis had agreed to pay him; that Davis was ready and willing to pay Morris the $50 and interest, and offered to do so after all liability on the part of Morris on the bond had ceased, but Morris refused to redeed the property as he had agreed; that for the services of plaintiffs Davis agreed to pay them $100, which is a reasonable fee for the services which they rendered him; that in pursuance of their agreement, about June 3, 1882, they filed a bill in equity in behalf of Davis against Morris, containing all of the proper allegations and prayers; that the suit came on for final adjudication at the fall term, 1883, of Fulton superior court, and resulted in a decree in favor of Davis, whereby it was decreed that Morris deliver up and can-

cel the deed made to him by Davis and his wife, and that Davis recover the real estate upon paying or causing to be paid to Morris the sum with interest for which it had been deeded to Morris as security; that no part of the $100 fee had been paid petitioners; that the case in which they were employed had terminated, and their services were then fully and completely rendered; that within thirty days after the rendering of the decree, they filed and had recorded in the clerk's office of Fulton superior court, their proper claim of lien against the realty for the sum of $100; that subsequent to the rendition of the decree and after the filing of their claim of lien, Davis paid Morris the money which by the decree he was required to pay in order to obtain a reconveyance, and Morris in attempted compliance with the decree, but through mistake or in wilful disregard thereof, made his quit-claim deed to the property to Davis' wife and son; that the effect of the decree and the payment of the money was to (and it did, at least so far as petitioners are concerned) revest in Davis and reconvey to him the title to the realty; yet Davis refuses to pay them the money which he owes them for fees as above stated.

The evidence in behalf of the plaintiffs showed that Davis engaged them as attorneys at law to represent him in getting back the land; that they filed the bill for him, prosecuted it and obtained the decree of October 6, 1883, ordering Morris to reconvey to Davis upon payment of a certain sum; that the fee of $100 was reasonable and had never been paid; that Jackson had an agreement with Davis for Davis to haul sand to Jackson's building, and he was given a ticket for each load of sand hauled, and the custom was to pay such tickets weekly, but Jackson did not know how much Davis hauled, nor what was done with the tickets given him; that Davis hauled no sand after

September 22, 1882 ; and that Jackson did not agree to advance any money for Davis to pay Morris, but plaintiffs were simply to represent Davis as attorneys in the case. The record of the suit filed by the plaintiffs for Davis against Morris, with the decree therein, the claim of lien, and the deed from Morris to Davis' wife and son, were in evidence. The plaintiffs having closed, the defendants moved for a nonsuit, and the motion was overruled.

The testimony introduced by the defendants tended to show the following: The agreement between Davis and plaintiffs was, that plaintiffs were to tender to Morris the money which Davis owed him, and in case Morris accepted, to pay him the money and take from him a deed of reconveyance to Davis ; if he refused, they were to institute a suit to compel him to accept the money and make Davis a deed ; in the event of their securing a favorable decree, they were to pay Morris the amount due and get a deed from him to Davis ; for all this Davis was to pay $100 in sand hauled to Jackson's building. The plaintiffs obtained a decree in Davis' favor, but took no further steps ; Davis waited several months and often urged them to carry out their contract, but they always put him off ; finally he decided not to wait on them longer, sold a mule and with the money thus obtained paid Morris and got the deed ; he had to sell the mule at a sacrifice, and had to employ another lawyer to obtain the deed, to whom he paid $20. Previously, according to his agreement, he had $100 worth of sand hauled to Jackson's building ; could not read or write and kept no account, and did not make any effort to see if the sand was credited on the fee, but supposed Jackson would keep that straight ; never received any money for the sand hauled, but turned over the sand tickets to King, and supposed they would be credited on the fee ; never

did agree to pay the whole amount demanded of him by plaintiffs, but did offer to give King some coal in settlement of the claim.

In rebuttal, the plaintiffs introduced evidence tending to show that Davis was given a ticket for every load of sand he hauled to Jackson's building; that after the plaintiffs entered on the case, they had Davis to sign a note to them for $100, which, when paid and not before, was to be in full of all their services, past services and those still to be rendered, in the Morris case; that the note was not paid, and that the reason they took it was that Davis had applied for a homestead, and before it was granted they wanted a showing for fee with homestead waived; that they represented Davis in several other matters at that time, and he never paid them any money except about $35 which came from the sand tickets, and this was allowed as a credit on his account with them for services, and was taken into account in the settlement made between them and him when the note for $100 was given; that after obtaining the decree, King told Davis how much he was to pay Morris and about getting the deed as decreed, and also told Davis to get up the money and he (King) would attend to it, but Davis never got the money and never said anything more to King about it until after King found out that he had paid the money and got the deed; that several times since the giving of the note and before and after this suit was brought, Davis promised to pay King; and that the plaintiffs have also brought suit on the note.

The jury found for the plaintiffs. The grounds of demurrer and of the motions for nonsuit and new trial, are stated in the opinion and need not be repeated here.

BLALOCK & BIRNEY, for plaintiffs in error.

JACKSON & JACKSON and KING & ANDERSON, *contra.*

SIMMONS, Justice.

1. The facts of this case will be found in the official

report. Under these facts, the trial judge did not err in refusing to grant a new trial. The evidence was conflicting as to the terms of the contract between Jackson & King and Davis; the jury believed the witnesses for Jackson & King, as they had the right to do; and the evidence of these witnesses fully established the contention of Jackson & King. The verdict, therefore, is not contrary to the evidence, nor strongly and decidedly against the weight of evidence, nor contrary to law and the principles of justice and equity, as complained of in the 1st, 2d and 3d grounds of the motion for a new trial.

2. The fourth ground of the motion complains that the verdict is contrary to a certain part of the charge of the court set out in the motion, and the 5th ground complains that this part of the charge was erroneous. These two grounds were not insisted upon either in the oral argument made before us or in the brief of counsel; and under the rulings in *Brown* v. *The State*, 82 *Ga.* 224, and *Parker* v. *Lanier, Id.* 216, we decline to pass upon these grounds.

3. The only remaining ground certified as true by the trial judge is the 7th, which complains that the court erred in denying the defendant's motion for nonsuit on the ground that the evidence showed that the plaintiffs had failed to carry out their contract, and also that they had accepted a promissory note in settlement of their claim, and therefore had no lien. The evidence for the plaintiffs in the court showed what the contract was, and that it was fully complied with on the part of Jackson & King. They testified that Davis was to pay them $100 to recover the land from Morris; that they did obtain a decree compelling Morris to reconvey the land to Davis upon the payment by Davis of a certain sum of money; that they notified Davis of this and requested him to raise the money and tender it to Morris, and told

him that when this was done they would have Morris reconvey the land to him; that Davis neglected to raise the money within a reasonable time, and that they had their lien recorded. Davis testified that Jackson & King were to raise the money and pay it to Morris, and that they refused to do so. This testimony being in on the part of the plaintiffs, the court did not err in declining to grant a nonsuit on the ground that Jackson & King had failed to carry out their contract.

4. Nor did the court err in overruling the demurrer to the declaration, upon the ground that the declaration showed on its face that the plaintiffs had never fulfilled their contract and had ·filed their lien before completing the services they had agreed to render, and therefore could have no lien, as complained of in the exception *pendente lite,* on which error was assigned here. If the contract between the parties was as stated by Jackson and King, the court did right in overruling the demurrer. According to their statement of the terms of the contract, it was not their duty, but was the duty of Davis, to furnish the money which, under the decree, was to be tendered to Morris; and if Davis neglected to raise the money for this purpose, it would not deprive them of their lien. If they recovered the land in a suit in equity, and had nothing more to do than to procure a deed from Morris when Davis should raise the money to pay him, and if Davis neglected to raise the money within a reasonable time, their lien attached to the land as against Davis, and he could not divest it by declining or refusing to raise the money, or by delaying to do so until five or six months thereafter, and then paying it to Morris and employing another attorney to procure the deed from Morris and having the deed made to his wife and son instead of himself. According to the theory of Jackson & King (which was found to be true by the jury), their lien attached to the

land when the money was paid to Morris by Davis; and this distinguishes the facts of this case from the facts in the case of *Usry* v. *Usry*, 64 *Ga.* 579, relied upon by the defendant in error. In that case Samuel Usry had obtained a verdict against Peter Usry for four hundred acres of land, on the condition that he would refund to Peter Usry $987.50. Samuel Usry failed to comply with the conditions of the verdict, and did not refund to Peter, or offer to do so, the amount of money required by the verdict; and this court held that Samuel's attorneys had no lien on the land as against Peter until Samuel had complied with the terms and conditions of the verdict, because the land still belonged to Peter; but the court said that when Samuel should become entitled to the possession of the land, his attorneys would then become entitled to a lien thereon for their fees. So in this case, it appearing that Davis had complied with the terms of the verdict and decree by paying to Morris what was due upon the land, his attorneys were entitled to their lien on the land, although he had the deed made to his wife and son.

5. It was also insisted that the court erred in not granting a nonsuit because Jackson & King had accepted a promissory note in settlement of their claim, and therefore had no lien. We know of no law in Georgia which would deprive an attorney of the lien given him by the code, if he takes the note of his client for his fee.                                    *Judgment affirmed.*