SANDERS MANUFACTURING COMPANY *v.* DOLLAR SAVINGS BANK.

1. Points not argued here by brief or otherwise will be treated as having been abandoned.
2. The mere fact that there are conflicts in the testimony does not render the direction of a verdict in favor of a party erroneous, when it appears that the conflicts are immaterial and that, giving to the opposite party the benefit of the most favorable view of the evidence as a whole and of all legitimate inferences therefrom, the verdict against him is demanded.
3. The Supreme Court has no jurisdiction to pass upon questions not made in the record.

Submitted March 15, — Decided April 10, 1900.

Complaint. Before Judge Fite. Whitfield superior court. April term, 1899.

*Jones & Martin,* for plaintiff in error.
*Shumate & Maddox,* contra.

LUMPKIN, P. J. The record discloses that J. M. Sanders, of .Dalton, Ga., doing business under the name of the Sanders Manufacturing Company, took from R. K. Griffin & Co., of Wheeling, W. Va., a promissory note payable to the order of the Manufacturing Company at the Dollar Savings Bank, in the city last mentioned. J. M. Sanders, without himself indorsing this note, delivered it to W. S. Sanders, who was going to Wheeling, with instructions to sell or dispose of it. On reaching that

place W. S. Sanders discounted the note at the bank named, and the proceeds of the note were subsequently duly turned over to J. M. Sanders. At the time of discounting the paper, W. S. Sanders wrote upon the back thereof an indorsement in these words: "Pay to the order of Dollar Savings Bank. [Signed] Sanders Mfg. Co., by W. S. Sanders." Afterwards the bank brought in the superior court of Whitfield county an action on the note against the Sanders Manufacturing Company as indorser. In one paragraph of the answer the defendant denied "that the Sanders Mfg. Co. ever indorsed said note, or authorized any one else to indorse the same, or ratified such indorsement after it was made." In another paragraph the defendant admitted the receipt of a notice "of the protest of said note," but called upon the plaintiff for strict proof of its allegations that the note had been presented for payment, that payment had been refused, and that the note had been protested for non-payment. After evidence had been introduced by both parties at the trial, the court directed a verdict in favor of the plaintiff, and the defendant sued out a bill of exceptions to this court. The only assignments of error therein are, (1) that the court erred in admitting in evidence the note sued on, with the indorsement on the same, over an objection that it had not been shown under the evidence that the note was indorsed by the Sanders Manufacturing Company or by any one authorized so to do, or that such indorsement was subsequently ratified; and (2) that the court erred in directing a verdict for the plaintiff, "because, as counsel for the Sanders Mfg. Co. insist, the evidence as to how the indorsement was placed on the note is conflicting, and, being one of fact, should have been left for the jury to pass upon." There was in the bill of exceptions no complaint that the direction of the verdict was for any other reason erroneous.

1. We are constrained to treat the assignment of error upon admitting the note in evidence as abandoned, for the case was argued here exclusively by brief, and in the brief of counsel for the plaintiff in error there was no allusion whatever to this point. *Parker* v. *Lanier,* 82 *Ga.* 219; *Brown* v. *State,* Id. 224; *Davis* v. *Jackson,* 86 *Ga.* 138; *Savannah Ry. Co.* v. *Wideman,*

99 *Ga.* 245; *Moss* v. *Lovett,* Id. 321; *Thompson* v. *Waterman,* 100 *Ga.* 586; *Laffitte* v. *State,* 105 *Ga.* 595; *Davis* v. *State,* Id. 784.

2. At the trial, Peterson, the cashier of the Dollar Savings Bank, testified that when W. S. Sanders negotiated the note at that bank he was asked "if he was authorized to sign the name of the firm as indorser, and he said he was; and," according to the recollection of the witness, Sanders "gave some evidence of authority." This witness further testified: "When the note was so discounted, there was no special agreement of any kind whatever; it was simply double-named paper, and no special agreement of any kind whatever was made other than what is indorsed on the paper. . . The note was discounted with the clear and distinct understanding that it was double-named paper, which means the liability of both maker and indorser;" and witness "would not have entertained this discounting in any other way." W. S. Sanders was introduced as a witness in behalf of the defendant, and gave the following account of what passed between himself and the cashier of the bank when the note was discounted: "When I got to the bank, Mr. Peterson said the bank would take the note, less 12 per cent. per annum, and immediately wrote out N. Y. Exchange for $570-.57 payable to Sanders Mfg. Co. And I, of my own volition, turned and wrote, then and there, the indorsement on the note; Peterson handed me the exchange, and I handed him the note. Not one word was said by Peterson or myself at any time about indorsing the note or my having authority to indorse the same. Nor did I state to Peterson at any time that I had authority to indorse the paper. Nor did I show any evidence of authority to indorse, as I had no such evidence of authority to show. When I wrote the indorsement on the note, I intended to simply transfer the title to the note to the Dollar Savings Bank, and thought that would be its effect. I did not notify the Dollar Savings Bank of any instruction given me by the defendant about disposing of the note, nor of what I intended by the indorsement."

From the foregoing, it will be seen that there was some conflict in the testimony as to what transpired between the cashier

of the bank and W. S. Sanders, but in our opinion this was entirely immaterial, for we are not called upon to pass upon the question whether the authority given to W. S. Sanders to " sell or dispose of " the note empowered him to indorse the name of the payee upon it merely to pass title, or also to bind the latter to pay in case the paper should be dishonored by the maker. The note, with the indorsement upon it, was put in evidence over an objection which was not insisted upon here. We must therefore treat it as having been properly introduced; and this being so, the question of the authority of W. S. Sanders to enter the indorsement is not here. The assignment that the court erred in directing a verdict because of the conflict in the testimony certainly does not raise this question. In substance, the cashier testified that W. S. Sanders expressly represented that he had general authority to indorse the note. The latter merely testified, in effect, that he indorsed it without saying anything about his authority to do so, and with the secret purpose of doing no more than pass title to the bank. Simply saying that the direction of the verdict was wrong because of the conflict between these two witnesses falls far short of invoking a ruling upon the legal effect of the authority given by J. M. Sanders to W. S. Sanders, as to the words conferring which there was no dispute. If the assignment of error had been that the verdict directed was contrary to law because this authority did not, in legal contemplation, extend further than empowering W. S. Sanders to indorse solely for the purpose of passing title to the note, the question above indicated would be properly presented. The assignment actually made, however, amounts in substance to this only: that taking the testimony of W. S. Sanders to be the truth of the case, a jury would have been warranted in finding in favor of the defendant. Upon the assumption that his testimony was true, how stands the case? He, without disclosing to the cashier his secret intention to indorse the note merely for the purpose of transferring the title without recourse on the Sanders Manufacturing Company, indorsed its name on the paper, delivered the same to the cashier, and received the proceeds thereof. Why, then, upon this state of facts, was the defendant not liable? There is not

in the record, save as to the point which was abandoned, any suggestion that W. S. Sanders was without authority to indorse the paper for all purposes. The case, as it comes to us, stands upon exactly the same footing as it would have done had the Sanders Manufacturing Company itself indorsed the note. This being so, the defendant's liability is beyond question. In the absence of any express stipulation to the contrary, the effect of an indorsement of negotiable paper is not merely to pass title thereto, but also to render the indorser individually liable thereon. That such an indorsement is made with a secret intention merely to pass title can not, of course, affect the rights of the indorsee, who, having no means of knowing what is passing in the mind of the other party, is justified in assuming that the latter intends his indorsement to have its usual legal significance. *Harris* v. *Amoskeag Lumber Co.*, 97 *Ga.* 465; *Exchange Bank* v. *Loh*, 104 *Ga.* 465.

3. In the brief of counsel for the plaintiff in error the point is sought to be raised that the direction of the verdict was also erroneous, because the plaintiff below failed to prove proper demand upon R. K. Griffin & Co., the makers of the note, and their refusal to pay. Whatever merit there may be in this contention, abstractly considered, suffice it to say we have no authority to pass upon the question, for the simple reason that no such point is even hinted at in the bill of exceptions. If anything is settled, it is that this court has no jurisdiction to decide questions not made by the bill of exceptions, however clearly and distinctly they may be presented in the brief or argument of counsel. Civil Code, § 5584.

*Judgment affirmed. All the Justices concurring.*