MYRICK *et al. v.* BROOKS COUNTY *et al.*

156

*Bennet & Bennet,* for plaintiffs.   *Lee W. Branch,* for defendants.

Gilbert, J.   Myrick and others, "residents, citizens and tax-payers" of Brooks County, filed a petition against the persons composing the board of county commissioners "as county commissioners" and "individually," and against Brooks County, seeking injunction to restrain the carrying out by the defendants of a contract made by them with the State Highway Department of Georgia, under which "the Board of County Commissioners of Brooks County" undertook "to secure the right of way for route No. 33 from the Okapilco Creek into Quitman," and "to build and grade the road, ready for paving, without cost to the State Highway Department of Georgia."   The commissioners of the City of Quitman made a similar contract concerning the portion of the route lying within the city.   The validity of that contract is not here involved. The petition alleges that the route in question "is a public road leading from" Moultrie to Quitman; that the Highway Department took the same under its jurisdiction six years previously to the filing of the petition, having notified the county in writing as required by law, and having since maintained, controlled, and supervised the same; that the State Highway Board "at the instance and request of the county commissioners of Brooks County and the city commissioners of the City of Quitman, changed the route of said road from just south of Okapilco Creek in said county, running said road in a southeasterly direction so as to enter the City of Quitman by North Washington Street;" that the change in the route was made by the Highway Board upon assumption by the county and city of the grading and placing the road in condition for paving; that the cost of the work undertaken by the county under the contract would be approximately $10,000; that the county commissioners have no legal right to spend the county's money or to use its force in carrying out said contract, and are individually liable for money so spent or work so done; that the contract is illegal, because the commissioners have no right to use any of the funds of

the county or road forces in constructing said road, and because, the road being a part of the State highway system, the county had no authority to use any of the county funds or road forces in con- structing the road, or to so use county funds or forces without reim- bursement from the State Highway Department.

The defendants demurred to the petition, on the ground that no cause of action is stated, nor is any ground stated which would warrant the grant of injunction; that the conclusion drawn from the facts, that the county commissioners have no legal right to spend the county's money or use its convicts in carrying out the contract, is not warranted by law, and that under the law the con- trary is true. The answer admitted all the allegations of the peti- tion, except that it denied all averments that the contract is illegal, and set up that the actual cost to the county of work under the con- tract would be $2714.55; that the county commissioners will not be individually liable for money spent or work done in executing the contract; that they have the right to use the money and forces of the county for the work undertaken; that the county then had on hand $5290.25 derived from gasoline tax, and that during April, 1932, $5000 additional from gasoline tax would be paid by the State to the county; and that this money was appropriated by the legislature of 1931 to the county with the distinct provision that it should be used exclusively for the maintenance and construction of public roads. On interlocutory hearing the court dissolved the restraining order previously granted, and denied an injunction, but granted supersedeas pending decision by this court of the questions made. The evidence for the petitioners consisted of the testimony of an engineer of the State Highway Department, that he estimated the cost of the work to the county under its contract to be $9842.73. That for the defendants consisted of testimony of the chairman of the Board of County Commissioners, that the cost of the work to the county would be $2714.55; that the county had a large number of convicts, some of whom it would be able to use on the work with- out neglect in the maintenance of other county roads; that such convicts have to be fed and clothed by the county regardless of whether the county undertakes the work under the contract; that the money then on hand and to be derived by May 1, 1932, from the gasoline tax would amount to more than $10,000; and that it was the purpose of the commissioners to use this money in doing the work under the contract,

The petitioners contend that when a road is taken over by the State Highway Department, making it a State-aid road, it ceases to be a county road, or a public road of the county upon which county funds may be expended. That position is untenable. It still remains a part of the system of roads of the county in which it is situated. The State merely relieves the county from bearing the expense of construction, upkeep, and maintenance, according to the contract made. When such road is so taken under the jurisdiction of the State Highway Department, the county is not *required* to levy taxes for construction or maintenance, or to use its funds or road forces for such purposes. Ga. Laws 1919, pp. 242, 249, provision 5. "All roads laid out for public use by an act of the General Assembly, if not otherwise provided, or by an order of the ordinary, are declared to be public roads." Civil Code (1910), § 629. Where the jurisdiction has been taken from the ordinary and conferred upon a board of county commissioners, a road laid out for public use by such board is a public road. The alternative road law, as provided in the Civil Code (1910), § 694 et seq., is operative in Brooks County. In § 696 authority is given to the proper authorities to levy a tax, the funds derived therefrom to be known as the "public-road fund," and shall be "used and expended for the purposes of paying the salaries and wages, and for working, improving, and repairing the public roads, as herein set forth." Section 697 makes provision for working public roads: (1) by using chain-gang labor; (2) free labor; (3) by contracting for such work and improvement; (4) by the use of any one or more of the above, or combining any or all of them. Section 698 provides for the purchase of machinery, etc., necessary for working the roads. Section 699 provides: "Said authorities shall expend said public-road fund in any manner they may deem best for putting and keeping the roads in thorough condition and repair." Subsequently to the enactment of all the statutes mentioned above, the State adopted the present system of State-aid highways. The law as it now stands, after a number of amendments, empowers the State Highway Department to take over, for purposes of construction or maintenance, or both, such public highways in the various counties as may fall within the provisions of the law. Pursuant thereto the road in question in Brooks County was taken over and became a State-aid road. The State Highway Department and the Board of County

Commissioners of Brooks County deemed it wise and proper to change a portion of the road so that it would enter the City of Quitman at a place other than where the road formerly entered. Certain citizens and tax-payers sought to enjoin the carrying out of the contract entered into by the State Highway Department and the county commissioners, on the ground that the county commissioners had no lawful authority to expend the county funds for the purpose of grading and preparing the short portion of the road where the change was made preparatory for paving.

It appears that it will not be necessary for any property tax to be levied. It is not denied that the county has on hand sufficient funds paid to it by the State from gasoline taxes to meet the expenses required. That fund, derived from the collection by the State of gasoline taxes, is paid over to the county to be "used exclusively for the maintenance and construction of public roads." The General Assembly has been careful, in its legislation with regard to creating State-aid roads, not to take away from the counties the power to expend their proper funds upon their public roads, and not to leave them entirely helpless and dependent upon the State Highway Department. The proviso to the act of 1921 (Ga. Laws 1921, p. 199) is as follows: "That nothing in this provision or in any other provision of this law shall be construed to mean that the county can not appropriate and spend any funds they desire on building and maintaining any of the State-aid roads." It is insisted by the plaintiffs that this proviso is not sufficient in itself to confer authority on the counties to spend their funds. The power already existed under § 696 et seq. of the Code. Plaintiffs cite, as authority for their contention, *Mitchell County* v. *Cochran,* 162 *Ga.* 810 (134 S. E. 768). Nothing in that case conflicts with what is here ruled. It was there merely held that funds derived from bonds issued by the county for the purpose of paving and grading the public roads of the county could not be used for the purpose of grading, paving, or improving streets in the municipality of Pelham. The question is not now presented as to the power of the county commissioners to expend county funds for grading this road within the limits of the City of Quitman. It appears from the record that there is a separate contract made with the City of Quitman for that portion of the road within the city. No issue was made on that question in the present case, and of course no ruling on it by the

trial court. The power of counties to expend county funds for the purpose of carrying out contracts with the State Highway Department was upheld in *Marks* v. *Richmond County,* 165 *Ga.* 316 (140 S. E. 880); *Ward* v. *State Highway Board,* 172 *Ga.* 414 (157 S. E. 328); *Blackwell* v. *State Highway Board,* 173 *Ga.* 392 (160 S. E. 503). *Judgment affirmed. All the Justices concur.*