SPAIN *et al.* v. HALL COUNTY *et al.*

No. 8659.   AUGUST 16, 1932.   REHEARING DENIED SEPTEMBER 27, 1932.

*Wheeler & Kenyon,* for plaintiffs.

*Boyd Sloan, J. B. Jones, McElreath & Scott,* and *S. M. Mathews,* for defendants.

BELL, J.   Citizens and taxpayers of Hall County brought a suit to enjoin the performance of two contracts, one between the commissioners of that county and the State Highway Board, for the grading of a portion of a State-aid road lying within the county; and the other between the commissioners and a contractor, subletting this work to the contractor.   The judge of the superior court, after hearing evidence, refused an interlocutory injunction, and the plaintiffs excepted.   The other pertinent facts as well as the questions for decision will sufficiently appear in the following opinion.

■ The contract between the State Highway Board and the county, wherein it was agreed that the county would grade according to specifications a portion of a State-aid road lying within such county, for a stated consideration to be paid by the State Highway Board, less a stipulated percentage thereof which was to be borne by the county, was not invalid upon the ground that it involved a loan of the credit of the county to the State Highway Board, in violation of paragraph 1 of section 6 of article 7 of the constitution of this State, which declares in part that "the General Assembly shall not authorize any county, municipal corporation, or political division of this State to become a stockholder in any company, corporation, or association, or to appropriate money for, or to loan its credit to, any corporation, company, association, or individual, except for purely charitable purposes." See, in this connection, *While* v. *Allanta,* 134 *Ga.* 532 (10) (68 S. E. 103) ; *McWilliams* v. *Smith,* 142 *Ga.* 209 (4), 214 (82 S. E. 569).

■ Nor was the contract illegal and void because it deprived the plaintiff taxpayers of their property without due process of law, contrary to the due-process clauses of the State and Federal constitutions.

■ Section 1 of article 6 of the act of August 18, 1919, reorganizing the State Highway Department, provided as follows: "Each and every county within said State, which have heretofore built or which shall hereafter build any portion of the roads within such counties designated by said board as a portion of said system of State-aid roads, with funds secured from the issuance of county bonds or otherwise, under approved plans, specifications, and supervision of the State Highway Department, shall be reimbursed in whole for the cost of said roads; provided, that before any portion of said State-aid road system shall be constructed by any county, projects therefor shall be approved in advance by said State Highway Board by formal action entered upon the minutes, specifically setting forth the agreements; and provided further, that thereafter said roads as so constructed shall constitue a part of the system of Sate-aid roads and be maintained by said Highway Board as herein provided for; and also provided, that no county so constructing any portion of said system of State-aid roads shall be repaid any portion of the cost thereof until after the entire system of interconnecting county-seat to county-seat highways shall be completed." Ga.

L. 1919, pp. 241, 252. Section 2 of the act of August 10, 1921, after providing that the funds of the State Highway Department shall be applied to specified purposes, concludes with this statement: "Nothing in this provision or in any other provision of this law shall be construed to mean that the county can not appropriate and spend any funds they desire on building and maintaining any of the State-aid roads." Ga. L. 1921, pp. 199, 201. Under these provisions, the State Highway Board and the county were impliedly, if not expressly, authorized to enter into this contract, provided other conditions so warranted.

■ Funds raised and to be raised from the sale of bonds issued in pursuance of an election held in 1919, authorizing the issuance and sale of such bonds "for the purpose of establishing, constructing, and maintaining roads in said county," could be legally applied by the county to pay the expense of grading the road under the contract with the State Highway Board, pending payment by the board of the consideration promised for such improvement. Such bonds were voted for the purpose of establishing, constructing, and maintaining any public roads in the county, and therefore the funds arising from the sale of such bonds could be used in grading the road in question. *Marks* v. *Richmond County,* 165 *Ga.* 316 (140 S. E. 880) ; *Murph* v. *Macon County,* 167 *Ga.* 859 (5) (146 S. E. 845) ; *Raines* v. *Terrell County,* 169 *Ga.* 725 (151 S. E. 509).

■ The county's pro rata of the gasoline tax as received from the State treasury likewise constituted a fund which could be used by the county in the grading of this road under the contract with the State Highway Board, the statute in reference to such tax providing that the portion distributed to the counties should be used "exclusively for the construction and maintenance of the public roads," and "to be expended upon public roads and bridges." Ga. L. 1925, p. 66. The statute does not restrict the use of this fund to public roads of the county other than State-aid roads.

■ Taxes are levied to meet the needs of the county arising during the year in which the levy is made. *Southern Railway Co.* v. *Wright,* 31 *Ga. App.* 28 (119 S. E. 542) ; *Seaboard Air-Line Ry. Co.* v. *Liberty County,* 39 *Ga. App.* 75 (146 S. E. 771), and cit. "When out of a fund raised by taxation for a specific purpose all demands and indebtedness properly chargeable against that particular fund have been paid, or deducted, and there remains a surplus

from such fund in the hands of the treasurer, the same then becomes a general fund, which may be lawfully applied to the payment of balances due on warrants drawn against other specific funds not sufficient for their payment, or to any other legitimate liability against the county." *Butts County* v. *Jackson Banking Co.,* 136 *Ga.* 719 (4) (71 S. E. 1065).

■ This county had adopted the alternative road law, and therefore had the power to levy a tax of four tenths of one per cent. upon all of the taxable property in the county, for the purpose of raising funds for "working, improving, and repairing the public roads" of such county. Park's Code, § 696.

■ After making the contract with the State Highway Board, the county sublet the work to a contractor, agreeing to pay for such work the same price which was specified in its contract with the board. In view of the funds which the trial judge could have found to be available, either actually or potentially, under the rulings made above, the agreement of subletting between the county and the contractor was not shown, as a matter of law, to be illegal upon the ground that it created a liability which the county could not retire from funds then in the county treasury and from such additional funds as could be raised by taxation during the current year. The facts touching this question were as follows: The county had bonds of the issue of 1919 in the sum of $100,000, which had never been sold. Under the ruling in the fourth division of this opinion, all of these bonds could be sold and the proceeds applied toward the grading of the road in question, although the county commissioners had actually voted to sell only one half of the amount. The county had in its treasury, from a previous sale of bonds of the same issue, a balance of at least $2000, which of course could be used for the same purpose. At the time of entering into the contract, the county had received and had in its treasury $5703 as its pro rata of the gasoline tax for the first quarter of the year in which the contract was made; and under the ruling made in the fifth division this fund could be applied to the grading of this road under the contract with the State Highway Department. The evidence showed that at the time the contract was entered into between the commissioners and the contractor the county had in its treasury a surplus from the preceding year of not less than $40,000, which remained from funds levied and collected

for specific purposes, after the payment of all demands which were chargeable against the funds raised by such specific levies. Under the rulings in division 6, this surplus constituted a general fund which could be applied toward the expense of grading the road in question. Under the evidence as to the value of the taxable property, it appeared that the county could levy a tax of more than $40,-000 under the provisions of the alternative road law as referred to in division 7 above.

It thus appears that from the funds in the county treasury and from such additional funds as could be raised by taxation during the year the county had available an aggregate sum of not less than $187,703, which could be applied to the liability incurred with the contractor. The contract called for the payment of a much lesser sum; and even if an unpaid balance which was due by the county upon a previous contract for the grading of another portion of the same road could be added in determining the validity of the contract now under consideration, the county's total liability under both contracts amounted to only $167,000. Accordingly, the contract was not shown to be illegal upon the ground that it created a liability which the county could not retire from funds then in the county treasury and from such additional funds as could be raised by taxation during the year.

■ The other questions raised in this case are controlled, adversely to the plaintiffs, by the decision of this court in *Waters* v. *Hall County*, 174 *Ga.* 596 (163 S. E. 609). There were several questions common to both cases. Although specific reference to each of them here would be a superfluous repetition, some comparison would seem to be necessary. In the *Waters* case the validity of a prior contract for the grading of a portion of the same road was drawn into question. It was there held that the county commissioners had authority to enter into the contract of subletting, without advertising and letting the same to the lowest bidder. But it was also contended in that case, as in the present case, that the contract should be condemned upon the ground that the commissioners either abused their discretion or failed to exercise a discretion with respect to this matter. Upon this question the evidence in the present record is substantially the same as that presented in the *Waters* case, and following the decision in that case we again hold that this contention is without merit. Some slight differences in

the evidence upon this question, however, should be mentioned. In the case at bar one of the county commissioners in his testimony gave the following as a reason why the contract was not advertised and let to the lowest bidder: "Mr. Barnett [the chairman of the State Highway Board] told us how we had to do, and we gave it to Mr. Woodall. . . We went to Atlanta and got the contract and gave it to Mr. Woodall. . . I never read the letter written by Mr. Laws, offering to do the work for $13,000 less than Woodall —what's the use of reading it when Mr. Barnett said we could not do it. I wouldn't say I heard the letter read. It didn't make any difference. Mr. Barnett told us how to let it." Under all the facts and circumstances of the case the credibility of this witness was a matter to be determined by the presiding judge as trior. From the testimony of another member of the board of commissioners, and from other evidence in the case, the trial judge could have found that the commissioners did exercise a discretion as to whether they should advertise for bids, and that they did not abuse such discretion in view of the circumstances. This was a case which involved the public interest, and the mere fact that one of the county commissioners may have given testimony which might have required a finding against him as an individual did not make it mandatory upon the trial judge to grant an injunction, where a different judgment was authorized by the other evidence.

The evidence quoted above did not appear in the *Waters* case, but in view of what has been said we do not think it should require a different result in the present case. Other evidence introduced in the present case but not in the former case consisted of a letter written by the county attorney to an engineer of the State Highway Department, in which it was stated that the county commissioners requested that a provision be included in the contract between the commissioners and the State Highway Department, stipulating that in the event the contract should be transferred or assigned to another, the county agreed to pay to the transferee or assignee "in full for said work at the prices" named in the contract between the county and the State Highway Board. This letter was written nearly two months before the contract between the county and the State Highway Board was finally entered into, *and no such provision was included therein*. After this the contract of subletting was made with the contractor. If the county commis-

sioners ever did desire that such a stipulation should be made in the contract, they had ample time in which to abandon the idea, and the evidence authorized the inference that they were not controlled by such desire when subsequently entering into the agreement with the contractor. Moreover, the letter amounted only to hearsay evidence, and it was not otherwise shown that the county commissioners did in fact desire the stipulation.

In all other respects the evidence upon the question of the exercise of discretion by the commissioners, including the evidence as to any intent or purpose of the commissioners to serve their personal interests, was the same in the *Waters* case as in the case now under consideration. In the present case, as in the *Waters* case, the evidence as to personal transactions, which if standing alone would tend to show interest or corrupt motives on the part of two of the commissioners instead of a fair exercise of discretion by them, was either denied or explained by the commissioners to the extent that the trial judge was not bound to conclude that the contract was contaminated by any such considerations. Upon the questions common to both cases we find no valid reason for reaching a different conclusion in the present case.

Under the rulings made above, and in view of the conflicting evidence, this court can not hold as a matter of law that the trial judge abused his discretion in refusing an interlocutory injunction. See *Myrick* v. *Brooks County*, 175 *Ga.* 155 (165 S. E. 50).

*Judgment affirmed. All the Justices concur, except Russell, C. J., who dissents.*