TAYLOR *et al. v.* CHATTOOGA COUNTY *et al.*

No. 10215. JANUARY 17, 1935.

*John D. & E. S. Taylor* and *Wright & Covington,* for plaintiffs. *Maddox, Matthews & Owens* and *Wesley Shropshire,* for defendants.

RUSSELL, Chief Justice. As appears upon a review of the pleadings and the evidence in this case, the prayers for equitable relief are based upon the contention that the assessment of more than $16,000, made by the commissioners of roads and revenues of Chattooga County in 1928 for bridge funds, was unauthorized and in violation of section 514 of the Civil Code of 1910, which requires that in the assessment of county taxes the several levies for county purposes must be specifically allocated. See also *Sullivan* v. *Yow,* 125 *Ga.* 326 (54 S. E. 173). The plaintiffs in their petition and evidence and argument contend that it was not the intention to apply the assessment of four mills upon the taxable property of Chattooga County to the building or repair of bridges as set forth in the assessment, but on the contrary the assessment levied was merely a colorable transaction to place the money extracted by levy from the taxpayers' pockets to the road fund and maintenance of a county chain-gang, by the accumulation of a surplus which, at the end of the fiscal year, would go into the general funds of the county applicable to any of the purposes for which county taxes may be levied. The defendants contend that the assessment was authorized by law in the circumstances of the case. At the conclusion of the

evidence the court directed a verdict in favor of the defendants. The plaintiffs made a motion for a new trial, based upon the general grounds, which was later so amended as to specifically allege that the court erred in directing the verdict for the defendants, inasmuch as a verdict in favor of the plaintiffs was demanded by the evidence, and also specifically upon the ground that there was one issue of fact in particular which should have been submitted to the jury, to wit: the determination of the question of what was the real intention of the county commissioners in the assessment of four mills for the bridge fund of Chattooga County. The court overruled the motion for a new trial, and the exception is to that judgment. There is no exception to any ruling on admissibility of evidence; so the only real question in the case is whether the court erred in directing the verdict in favor of the defendants. To state the question involved in this case in a different way would be to ask, was the assessment of four mills, levied by the commissioners of Chattooga County for bridge purposes, for any reason unlawful?

We do not lose sight of the fact that this court, from its earliest history, has been inclined to leave the solution of any contested issue of fact to the unhampered determination of a jury, and the precious privilege of trial by jury would be indeed but a hollow mockery were any other rule than this observed. The Code, however, recognizes that there are instances in which it is entirely proper for the court to direct a verdict. Section 5926 declares: "Where there is no conflict in the evidence, and that introduced with all reasonable deductions or inferences therefrom demands a particular verdict, the court may direct the jury to find for the party entitled thereto." The court can not direct a verdict where there is any inference supported by the evidence which would authorize a verdict to the contrary. "The mere fact that there are conflicts in the testimony does not render the direction of a verdict in favor of a party erroneous, when it appears that the conflicts are immaterial, and that, giving to the opposite party the benefit of the most favorable view of the evidence as a whole and of all legitimate inferences therefrom, the verdict against him is demanded." *Sanders Manufacturing Co.* v. *Dollar Savings Bank,* 110 *Ga.* 559 (2) (35 S. E. 777); *Skinner* v. *Braswell,* 126 *Ga.* 761 (2) (55 S. E. 914). See *Cook* v. *Washington,* 166 *Ga.* 329 (143 S. E. 409). If, under the rules of law, the evidence which is pre-

sented is (or becomes) impertinent, irrelevant, or immaterial, then the previously apparent clouds of conflict disappear and are dissipated by clear sunbeams of the law, and these point a path along uncontradicted evidence which authorizes the court to direct the verdict. The axiomatic rule that it is never error to refuse to direct a verdict is not in conflict with the code section. This rule of action directed to the trial court merely calls attention to the other · axiom, that a judge directs a verdict at his peril.

We are of the opinion that the judge in the present instance did not err in the direction of a verdict in this case. There is no evidence that contradicts the testimony offered by the defendants that at the time the assessment was made in August, 1928, the board of commissioners of Chattooga County had contracted with the State Highway Board to build a road from Summerville to Rome, which would cross the Chattooga River, and which under the agreement was to be bridged by a concrete bridge to be erected, as was the road to be constructed, upon a 25-75 per cent. basis. At the time the estimate was made the exact cost of the bridge and its necessary approaches could not be precisely determined, but it was known that the bridge would cost upwards of $31,000. The one-fourth cost of the bridge, as finally ascertained, was $8710.58. For this amount the county, under its contract, was clearly liable, and it was right and proper for the county authorities, by assessment of taxes for bridge funds, to raise the money with which to discharge the obligation of the county. There is no contradiction of the evidence to the effect that the county's ordinary liabilities for the repair and painting of bridges for the year 1928 amounted to some $3200. There is no contradiction of the evidence that the county commissioners had for some time intended and discussed the removal of another bridge, known as the Trion bridge, which might cost between $3000 and $4000. The $8700 to be paid as the county's part of the new concrete bridge, and the $3200 actually expended upon numerous bridges during the year 1928, and $3500 (the average between the $3000 and $4000 estimates) for the removal of the Trion bridge, would amount to over $15,000. The amount which the 4-mill assessment made in August, 1928, was estimated to raise was $16,343.70. As said by Mr. Justice Hill in *Vornberg* v. *Dunn*, 143 *Ga.* 111 (84 S. E. 370) : "We can not say, as a matter of law, that the margin is too great for these pur-

poses." In *McCrory Co.* v. *Board of Commissioners,* 177 *Ga.* 242 (2) (170 S. E. 18), this court said: " 'The discretion vested in the county authorities must be from the nature of the case a broad one, and therefore the reviewing power of the judge of the superior court must be exercised with caution, and no interference had unless it is clear and manifest that the county authorities are abusing the discretion vested in them by law. See *Barlow* v. *Ordinary of Sumter County,* 47 *Ga.* 639; *Waller* v. *Perkins,* 52 *Ga.* 233. The matter is left in the first instance to the discretion of the county authorities, to be controlled only by the discretion of the superior court to be exercised within limits. This discretion is to be wisely and cautiously exercised by the county authorities, and the judge of the superior court in dealing with their action must exercise that wisdom and caution which is required of those whose conduct is under review.' *Commissioners of Habersham County* v. *Porter Manufacturing Co.,* 103 *Ga.* 613, 617 (30 S. E. 547)." We can not say, as a matter of law, that the levy for bridge purposes in the instant case was excessive for the necessary demands for the building and repair of bridges in Chattooga County for the year 1928, when the insolvency of some of the taxpayers and the commissions and charges of the tax-collector, tax-receiver, and county treasurer are taken into consideration. If, as a matter of fact (as established by the uncontradicted evidence), the levy of the county tax for bridges, under the Code of 1910, section 513, par. 2, was not excessive, the whole case of the plaintiffs crumbles, and inferences and presumptions as to what was the intention of the board of county commissioners are worthless. This is the third appearance of this case before this court. *Taylor* v. *Justice,* 168 *Ga.* 482 (148 S. E. 274), *Taylor* v. *Chattooga County,* 170 *Ga.* 607 (153 S. E. 741). Learned counsel for the plaintiffs are mistaken in saying that in the latter case the judgment was reversed upon the direction of a verdict in behalf of the defendants. It was brought to this court on an assignment that the lower court errred in dismissing the plaintiffs' petition on demurrer after it had been amended. In other words, the Supreme Court decided in that case that the judge correctly allowed the amendment, but erred in dismissing the petition after allowing the amendment.

Learned counsel for the plaintiffs say, in their brief: "We rely *solely* [italics ours] upon the decision in this case rendered by this

court—*Taylor* v. *Chattooga County,* 170 *Ga.* page 607—wherein this court held: ' A levy of a county tax in a given year for bridge purposes, for a greater amount than is necessary for such purposes, the intent being to create a surplus fund to be applied at the end of the year to support of the county chain-gang, is unlawful as opposed to the provisions of the Political Code, sections 513, 514.' From the brief of evidence it affirmatively appears that the levy of taxes for Chattooga County was made for 1928 at the August meeting, 1928. That for bridge purposes, under contract by the county up to the time of the levy in August, there had been a total expended of $2631.48 for bridges, and that this was in payment of all contracts theretofore made during the year 1928 for bridge work in the county. That, in addition to this, there was paid for bridges during the remainder of the year $640 after the tax was levied. The amount diverted at the end of 1928 to roads and chain-gang from bridge funds was $7,742.27." As already stated, the county had contracted with the State Highway Department to pay 25 per cent. of the cost of a bridge across the Chattooga River, and the county paid this in work under the contract which had already been made prior to the tax levy. It is true no warrant was drawn upon the treasury; but this was not essential, because the debt had been paid under the provisions of the contract with the highway department, and the $7742.27, which of itself would have been insufficient to pay the amount of the county's obligation upon the construction of the bridge, by operation of law fell, at the end of the year, into the general fund of the county, subject to be used for any lawful county purpose at the discretion of the commissioners. The fact that $17,000 was diverted during the year 1929 from the bridge fund and applied to the chain-gang fund, as argued by counsel for plaintiffs, was not material in this case, for the reason that the petitioners only attack the tax assessment of 1928 as being excessive. The testimony of Mr. Espy, that "the records and books of Chattooga County show that of the bridge tax levied for the year 1928 $3271.85 was actually used to build bridges, and $17,596.90 was actually diverted to the chain-gang fund," when the testimony as a whole is considered, amounts to nothing more than that this is the appearance of the record, and means nothing more than that a warrant was not drawn to pay the $8710.58 which was accepted by the State Highway Board in consideration of the 25-75 per cent.

contract in part payment of its obligation to Chattooga County. The same may be said as to the apparent diversion of the funds in 1929; for the testimony shows that the Highway Board was still in arrears to Chattooga County for work in grading or other construction of the highway. Under the ruling of the majority of this court in *Spain* v. *Hall County,* 175 *Ga.* 600 (165 S. E. 612), the contract between the State Highway Board and the County of Chattooga for the construction of the Rome and Summerville road, and the construction of the bridge across the Chattooga River as a part of the road, were valid contracts. The resolution adopted by the board of commissioners at the November term, 1927, requesting the State Highway Board to advertise and let the contract for the building of the bridge in question, and agreeing to participate in its cost to the extent of 25 per cent. thereof, makes it apparent that the State Highway Board let the contract for the bridge, and that 25 per cent. of the cost of the same was deducted from the amount that the State Highway Board owed Chattooga County on the road-construction contract. The board of commissioners authorized the letting of this contract, the bridge was erected, and the county has received the benefit. This is a case in which equitable relief and injunction are prayed for. In such a case it would seem that the doctrine announced in *Butts County* v. *Jackson Banking Co.,* 129 *Ga.* 801 (60 S. E. 149, 15 L. R. A. (N. S.) 567, 121 Am. St. R. 244), would be applicable: "An action for money had and received may be maintained by one who has loaned money to a county, and which has been used by it to discharge a legally incurred liability for a current expense, although the governing official or officials of a county have no authority to borrow the money or to give a note therefor." Chattooga County had the legal authority to build the bridge and legal authority to contract with the State Highway Board for the building of the bridge; and even though there were some irregularities in the manner in which the transaction was handled, the county having gotten the benefit of the bridge and having paid the State Highway Department its proportionate part of the cost thereof, the plaintiffs can not take advantage thereof. The provision of section 387 of the Code with reference to the letting of contracts to the lowest bidder after due advertisement is not applicable to a bridge on a road which constitutes a part of the State highway system and which is actually being constructed

by the State Highway Department. As said by Mr. Justice Hines in *Lee County* v. *Smithville,* 154 *Ga.* 550, 560 (115 S. E. 107): "So we reach the conclusion, that the State Highway Department, co-operating with the county commissioners of Lee County, can build this public road through the town of Smithville without its consent and against its will." The right and authority to let the contract for the bridge across the Chattooga River was in the highway department as a State agency, and not in the county officials, and there is no contention that the county or the plaintiffs were injured by reason of the fact that the bridge was contracted for and built under the supervision of the State Highway Board. In *Gaines* v. *Dyer,* 128 *Ga.* 585 (6 *a*) (58 S. E. 175), it was said: "It was not necessary to the validity of the levy of such special tax that the contract for the construction of the bridge should previously have been executed." In *Blalock* v. *Adams,* 154 *Ga.* 326, 332 (114 S. E. 345), the contention as to the tax levy was that all contracts with the county must be in writing and spread upon the minutes of the commissioner, and, if not, that the levy was illegal. As to this the court said: "This position is untenable. It is not essential to the validity of a tax levy for the purposes specified in this item of the levy, that contracts for effectuating such purposes have been previously made." See also *Southwestern R. Co.* v. *Wright,* 156 *Ga.* 10 (118 S. E. 552).

*Judgment affirmed. All the Justices concur.*